530 So.2d 1242 (1988)
STATE of Louisiana
v.
Terril A. ROEBUCK, Hattie Roebuck, Donald Roebuck, Marvin Louis and Pamela LaCour.
Nos. 88-K-0436, 88-K-0443 and 88-K-0445.
Court of Appeal of Louisiana, Fourth Circuit.
August 3, 1988.
Writs Denied September 9, 1988.
*1244 Harry F. Connick, Dist. Atty., Glenn Woods, Asst. Dist. Atty., New Orleans, for plaintiffState.
Ike Spears, New Orleans, for defendantTerril A. Roebuck.
Gary W. Bizal, New Orleans, for defendantsHattie Roebuck, Donald Roebuck and Marvin Louis.
Charles L. Elloie, New Orleans, for defendantPamela Lacour.
Before GARRISON, BARRY and ARMSTRONG, JJ.
BARRY, Judge.
Relators Terril Roebuck, Pamela LaCour, Hattie Roebuck, Donald Roebuck and Marvin Louis[1], charged with possession with intent to distribute cocaine and marijuana, filed these writ applications as a result of the trial court's denial of their motions to suppress.[2] On March 10, 1988 this Court denied the writs because they were not supported by proper documentation. On March 11, 1988 the transcripts and other documents were filed and this Court granted stay orders. On April 26, 1988 this Court ordered relators to provide one day's testimony which was missing.
At the hearing Officer Robertson of the Narcotics Drug Abuse Division testified that on October 7, 1987 an informant told him that Terril Roebuck and a subject identified as Pam were using Room 105 of the Bayou Plaza Hotel as a stash pad for huge quantities of cocaine. Roebuck had two vehicles, a black Cadillac Seville and a Lincoln Town Car in which he made daily drops for retail distribution. The informant mentioned three addresses on Eagle Street. According to the search warrant application for Room 105, the informant had been inside Room 105 within the past three days of his conversation with Robertson and observed a large quantity of cocaine. Officer Robertson testified the informant said he was in the room a day or two before the October 7 conversation with the officer. Officer Robertson said he knew the informant for six months to a year and he had previously provided information *1245 which led to numerous arrests in two cases. Officer Imbraguglio had access to the same informant.
On October 7, 1987 Officer Robertson drove to the hotel parking lot and observed both vehicles. After checking the license plates he discovered neither car was registered to Roebuck. The Lincoln was registered to Mrs. Hattie Roebuck, Terril's mother, who had five felony arrests, two related to narcotics violations and one conviction. The Cadillac was registered to Zelda Bailey. According to the affidavit the license number of the Lincoln was #A309945 and the Cadillac was # 315N159.
On October 8, 1987 Officer Robertson spoke to Officer Wethern whose confidential informant said Roebuck was dealing drugs from 2420 Eagle Street, but had a stash place somewhere else at a hotel. This information corroborated what Robertson had been told. The officer ran Roebuck's name through the computer and found five drug felony arrests.[3]
Surveillance of Room 105 began on October 8, 1987 around 12:30 or 1:00 p.m. and lasted a few hours. The officers observed Pam Lacour drive to the hotel in one of the vehicles, go into the room, and shortly thereafter Roebuck and Lacour left. Roebuck carried a brown lunch-size paper bag and Lacour a purse. They drove to 2420 Eagle Street, Roebuck exited, walked inside and shortly after he went outside with a brown bag. The next stop was 1515 Dufossat Street. The last stop was Kelly's Bar in the 2100 block of Claiborne Avenue and they then returned to the hotel.
On October 9, 1987 the surveillance resumed around 12:30 p.m. by Officers Robertson and Imbraguglio. Since Officer Imbraguglio saw Roebuck open the hotel door and look around, so Officer Robertson left to obtain a search warrant[4] based on the prior day's surveillance which corroborated the informant. Officer Polk remained in the parking lot.
Officer Imbraguglio testified that Lacour arrived in the Lincoln and went into the hotel room and shortly thereafter she and Roebuck left Room 105. Roebuck carried a brown paper bag and got into the driver's seat, Lacour sat on the right, and Roebuck put the bag on the front seat. Lacour's purse was also on the seat. The two were about to close the car doors when Officers Imbraguglio and Polk stopped them. Officer Smith arrived seconds later. Roebuck and Lacour got out of the car.
Officer Imbraguglio put Roebuck to the side of the vehicle by the door and patted him down. Officer Overman, who had arrived with her partner, frisked Lacour. Nothing was found on either suspect. Officer Imbraguglio testified he then reached in and picked up the bag, looked inside and found what appeared to be cocaine (which later tests showed was a pound of cocaine). He found a pistol and currency in Lacour's purse. He arrested Roebuck and Lacour for possession of cocaine with intent to distribute and Lacour for carrying a concealed weapon. The officer also advised them of their rights and that a search warrant was being prepared. The key to Room 105 was taken from Roebuck.
Several officers used the key in order to secure the room. Around 1:15 p.m. Roebuck and Lacour were brought into the room to wait for the warrant. According to the officers there was no search at that time. Officer Imbraguglio left briefly, went to the office, and gave Officer Robertson the arrest information to be used in the search warrant application. Officer Polk testified that Roebuck bragged about his profitable operation while everyone waited for the warrant.
Officer Robertson testified that he arrived at the hotel with the warrant about 3:45 p.m., gave it to Officer Imbraguglio who gave it to Roebuck, advised him of his rights and then searched the hotel room. Officer Imbraguglio seized four plastic *1246 bags of cocaine from a dresser drawer. The return on the search warrant indicated seizure of one bag containing a large brick, a second containing 52 individual baggies, the third with 6 clear plastic baggies, the fourth containing 5 clear plastic baggies of white powder, one automatic pistol and various personal papers. Officer Robertson testified a hotel safe deposit key was found, but the box was empty when it was searched pursuant to a warrant. A card which appeared to have a safe combination was deliberately not seized, but the officers made note of the combination.
According to Officer Robertson, Roebuck talked freely about his "business" and wanted to cooperate to avoid jail time. Roebuck said his working capital (about $100,000) was stashed in a safe deposit box in a Jennings bank, but nothing was ever found.
Officer Robertson testified Roebuck and Lacour made bond subsequent to their arrest. The confidential informant contacted him seeking more money for information and said Roebuck and Lacour were conducting business as usual. The stash pad moved to 2429 Eagle Street, the residence of Evangeline Shy who allegedly was paid to keep the supply, one of the three addresses (2420, 2429, 2432) the informant had originally mentioned to Robertson. 2420 Eagle Street, Roebuck's address, was used for smaller quantities of cocaine. 2432 Eagle Street was the residence of Hattie Roebuck to whom the Lincoln was registered. Surveillance of the 2400 block of Eagle Street began on October 14, 1987. Officer Robertson became ill and left. Officer Imbraguglio remained and was the affiant for the subsequent search warrants on 2420, 2429 and 2432 Eagle Street.
Officers Polk and Smith constituted the stationary surveillance on October 14 and 15 while Officer Imbraguglio remained mobile. No one was stopped although traffic was very heavy. Roebuck was observed walking up and down the block between the houses. Officer Smith testified he saw Roebuck walk between 2420 and 2432 Eagle Street several times.
According to the affidavit for the three search warrants, at approximately 1:00 p.m. on October 14 the officers observed Roebuck leave 2420 Eagle, walk to 2429 Eagle and enter. A few minutes later Roebuck left and walked back to 2420 and entered. At approximately 1:45 p.m., Lacour left 2432 Eagle, went to 2429, stayed a short time, then returned to 2432. Roebuck emerged from 2420 walked up and down the 2400 block of Eagle with a cellular telephone.
Within a period of an hour the officers observed six cars park in front of or near 2420. In each instance the occupants would exit and spend a brief time either at the door or inside 2420, then leave the house, enter their vehicles and leave the area. One of the cars was registered to Samuel Hampton who had previous drug arrests. One person was observed looking at something in his hand as he was walking from 2420 to his car. Another man briefly visited 2429 Eagle after leaving 2420 and stopped to talk with Roebuck on the street prior to leaving the scene. At approximately 3:35 p.m. a truck stopped in front of 2420, Roebuck entered 2420 and after he emerged he gave something to the passenger and the truck left.
The officers observed Lacour walk from 2432 to 2429 Eagle. Roebuck flagged down a passing vehicle and talked with the occupants, and a black male pedestrian joined in the discussion. Lacour left 2429 Eagle carrying a paper which she handed to the pedestrian. The pedestrian walked away with Roebuck and Lacour following. Roebuck and Lacour returned to 2429 within minutes with Lacour carrying a shopping bag. A few minutes later an unidentified black male left 2420 and entered 2429, stayed a few minutes, then returned to 2420 carrying a bag. The man immediately left 2420 entered Roebuck's Lincoln, and drove from the scene. The officers then terminated the surveillance.
Warrants were obtained and executed on October 16, 1987. Officer Glasser testified he broke down the door at 2432 Eagle and arrested Hattie and Donald Roebuck. Officers Overman, Palermo and LaGrange assisted *1247 and all testified. LaGrange found cash, money orders and food stamps in the kitchen. Marijuana was found in the front room and under the house. Officer Polk searched 2420 Eagle Street after Officer Imbraguglio detained Marvin Louis who was standing on the porch with Terril Roebuck. After contraband was discovered, Louis was arrested.
Officer Imbraguglio testified he also detained Terril Roebuck in front of 2420 Eagle, frisked him, advised Roebuck that the officers had search warrants for 2420, 2429 and 2432 Eagle, and read him his rights. When asked for his valuables, Roebuck turned over a wad of money and a small piece of cardboard paper containing a safe combination. Officer Robertson took Roebuck to 2429 Eagle Street where Officer Robertson and Sergeant Elder made a forced entry. Officer Smith assisted in the search and Sergeant Elder opened the safe since its combination had been obtained from Roebuck's person and had also been noted during the October 9 search. Currency, jewelry and a large quantity of cocaine were found inside, Roebuck was arrested, and the safe taken to headquarters.
The return on 2432 Eagle Street indicates the items seized included three clear plastic bags with a green vegetable matter, one set of keys, personal papers, food stamps, checks, money orders, and $8,986.00.[5] The return for 2420 Eagle Street showed the seizure of one clear plastic bag containing green vegetable matter, one Nexus brand gram scale, one Hanson gram scale, one radiofone beeper and charger, two boxes of generic plastic sandwich bags, personal papers in the name of Hattie and Terril Roebuck, one Bell & Howell beeper, one mobile alert vehicle page alarm, three key rings with seven keys, and $2,026.00 in currency.
The return on 2429 Eagle Street indicated seizure of one large bag containing 11 small bags of white powder, one large bag containing 5 smaller bags, one large bag containing 12 smaller bags, one large bag containing 20 smaller bags of white powder, one sentry floor safe, one key ring with keys, one safe combination, various personal papers, jewelry receipts, and a detailed list of jewelry.
Terril Roebuck, Pamela Lacour, Hattie and Donald Roebuck, Marvin Louis and Evangeline Shy were arrested for possession of over 200 grams of cocaine and marijuana with intent to distribute.

SEIZURE OF GUN AND COCAINE FROM ROEBUCK AND LACOUR
Relators argue there was no probable cause to arrest or reasonable suspicion to stop Lacour and Roebuck. Officers Imbraguglio and Polk both testified they stopped Roebuck and Lacour on October 9, 1987 as they entered the car in the parking lot of the Bayou Plaza Hotel. They spoke in terms of frisking and patting down the two suspects who were under investigation for narcotics. In reality the officers arrested Terril Roebuck and Pam Lacour at that time although the formal arrest occurred moments after the bag and purse were seized. An arrest occurs when the circumstances indicate an intent by the officers to effect an extended restraint on the liberty of the suspect rather than at the moment that the police officer informs the accused that he/she is under arrest. State v. Raheem, 464 So.2d 293 (La.1985); State v. Junegain, 478 So.2d 542 (La.App. 4th Cir. 1985), writ denied 483 So.2d 1018 (La.1986). Officers Imbraguglio and Polk said they moved in to stop Roebuck and Lacour before they left with the cocaine for daily distribution.
The question is whether the officers had probable cause to arrest. They clearly had reasonable cause to stop the two. Probable cause to arrest exists when the facts and circumstances known to the officers and of which they have reasonably trustworthy information are sufficient to justify the belief by a man of ordinary caution that the suspect has committed or is committing a crime. State v. Wilson, *1248 467 So.2d 503 (La.1985), cert. denied 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985); State v. Ruffin, 448 So.2d 1274 (La.1984).
On October 7, 1987 Officer Robertson's confidential informant had said Roebuck and Lacour were using an apartment or hotel room at the Bayou Plaza Hotel as a "cool pad" for stashing a large amount of cocaine. The informant, proven reliable in the past, stated Roebuck and a female subject known as Pam (Lacour) made daily distribution runs (to 2420 Eagle Street and other locations) around 2:00 p.m. in one of two vehicles, a black Cadillac Seville and a Lincoln Town Car. Officer Robertson drove to the hotel parking lot, saw the two cars and found that one of the license plates were registered to Roebuck's mother, Hattie.
Officer Robertson contacted Officer Wethern who also had information from his confidential source that Roebuck was dealing from 2420 Eagle Street and had a stash at a hotel of a large amount of cocaine. On October 8, 1987 the police officers established a surveillance. They observed Roebuck (carrying a brown paper bag) and Lacour leave the hotel and drive to 2420 Eagle Street and two other locations before returning to the room. Roebuck would enter and exit with the bag. That activity corroborated the confidential informant. On October 9, 1987 around 12:30 p.m. surveillance began again. Roebuck was observed cautiously looking around outside Room 105. Armed with that information and its corroboration, Officer Robertson obtained a search warrant.
Under these circumstances the officers certainly had probable cause to arrest Roebuck and Lacour. A search incident to a lawful arrest is an exception to the warrant requirement. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Such a search is limited to the person and the area within the arrestee's immediate control. State v. Bradford, 298 So.2d 781 (La.1974); appeal dismissed 420 U.S. 915, 95 S.Ct. 1109, 43 L.Ed.2d 387 (1975); State v. Wilson, 457 So.2d 75 (La. App. 4th Cir.1984), writ denied 462 So.2d 208 (La.1985).
A search incident to arrest could encompass a search of the interior of the automobile (for the paper bag and purse) when the arrestees remain in proximity to the car. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); State v. Drott, 412 So.2d 984 (La.1982). Although Roebuck and Lacour were removed from the car, they were standing on each side of the car. The driver's door was open as Roebuck was frisked against that side of the car. The search of the brown bag and the purse on the car seat was valid as a search incident to arrest. See State v. Wilson, 457 So.2d at 77. The cocaine and gun were properly seized.

SEIZURE OF EVIDENCE FROM ROOM 105
Within five minutes of the arrest of Roebuck and Lacour, the officers used the key taken from Roebuck to gain access to Room 105 in order to secure it. Relators argue no exigent circumstances existed to justify the warrantless entry. Officer Imbraguglio testified that about five officers went in to insure that no one was inside who might destroy evidence while they waited for the arrival of the search warrant. It was possible a third suspect had witnessed the arrest at the car. Since there was a rear exit to the room, such a person could have taken contraband and eluded the police. The room had been under surveillance only about 45 minutes. Officer Robertson (who helped to decide to secure the room) testified he had information that not too many people went to buy at the room, but on occasion some of the larger runners stopped there. The search warrant affidavit indicated on some occasions customers would go to the room to buy large amounts of cocaine. Robertson testified that during the execution of the warrant one or two people appeared at Room 105 and were detained.
The officers' entry to secure the room qualifies as a recognized exception to the warrant requirement for a quick search of the premises to determine the presence of *1249 another perpetrator. See Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); State v. Perry, 502 So.2d 543 (La.1986), cert. denied ___ U.S. ___, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987).
The warrantless entry was justified by these exigent circumstances and the likelihood that evidence would be destroyed. The officers' testimony indicated that Officer Robertson went to headquarters for the warrant before Roebuck and Lacour left the room and were arrested. The officers had probable cause to arrest the two and had good reason to believe that a large quantity of cocaine was in the room.
Unlike the DEA agents in United States v. Allard, 634 F.2d 1182 (9th Cir.1980) who secured the hotel room to maintain the status quo and then decided to ask for a search warrant, the officers here had previously sought a search warrant and had probable cause to arrest the two suspects. The rationale of Allard which is relied upon by applicants was rejected by the United States Supreme Court in Seguara v. United States, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) which reaffirmed the independent source rule followed by all federal circuits except the Ninth. See United States v. Lancellotti, 761 F.2d 1363 (9th Cir.1985); United States v. Driver, 776 F.2d 807 (9th Cir.1985). Unlike the government agents in United States v. Griffin, 502 F.2d 959 (6th Cir.1974), cert. denied 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645 (1974), the police officers observed nothing in the hotel room in plain view subsequent to the warrantless entry and exigent circumstances existed here to justify the entry.
All of the officers consistently testified that no one searched until the warrant arrived. All stated nothing was in plain view. The defendant/applicants presented no evidence to the contrary.
In Segura v. United States, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), agents arrested Segura for cocaine distribution in the lobby of his apartment building around 11:15 p.m., took him up to his third floor apartment and knocked on the door. Without requesting or receiving permission, they entered with Segura. Three other persons were present and told a search warrant was being obtained. The agents conducted a limited security check to ensure that no one else was there to pose a threat to their safety or to destroy evidence. In plain view they observed drug trafficking paraphanalia but nothing was touched. A woman who had been under surveillance was arrested and everyone taken to headquarters.
Two agents remained in Segura's apartment awaiting the warrant which was issued and executed around 6:00 p.m. the next day, some nineteen hours after the initial entry. Pursuant to the warrant cocaine was seized, along with ammunition, $50,000 in cash, and records of narcotics transactions, plus items observed during the security check. The items observed during the security search in plain view after the warrantless initial entry (found not justified by exigent circumstances) were suppressed. The United States did not argue that the initial entry was justified.
The only issue before the Supreme Court was whether the drugs and other items discovered and seized pursuant to the valid warrant should have been suppressed as derivative of an illegality. The question was whether the challenged evidence was found by exploitation of the initial illegality or by means sufficiently distinguishable to be purged of the primary taint. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The exclusionary rule has no application where the Government learned of the evidence from an independent source. Segura, 104 S.Ct. at 3385.
The Segura Court assumed arguendo that the agents' entry and continued presence constituted a seizure of the apartment and its contents. The Court held: "[S]ecuring a dwelling, on the basis of probable cause, to prevent destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents." 468 U.S. at 810, 104 S.Ct. at 3388.
*1250 The Court concluded that the illegality of the initial search was irrelevant since there was an independent source of information wholly unconnected to the initial entry and that information upon which the warrant was secured was known to the agents well before the entry. That seized evidence was the product of a search conducted under a warrant; the warrant was a means sufficiently distinguishable to purge the evidence of any taint arising from a possibly illegal entry.
Here the officers observed nothing in Room 105 which would aid in their investigation or to help them obtain a warrant. The warrant application for Room 105 made no mention of entry into the room and no information was obtained from the entry which we have found justified. The evidence seized pursuant to the warrant was not obtained by exploitation of the entry, but by means sufficiently distinguishable to be purged of any taint. The evidence from Room 105 does not have to be suppressed because of the police entry into the room hours before, even if such entry is considered illegal.
The cocaine and documents taken from Room 105 were seized pursuant to a search warrant which may issue only upon an affidavit establishing probable cause to the satisfaction of a neutral magistrate. La. Const. Art. I, § 5; La.C.Cr.P. Art. 162. Probable cause exists when the facts and circumstances within the affiant's knowledge and those of which he/she has reasonably trustworthy information are sufficient to support a reasonable belief that evidence or contraband may be found at the place to be searched. The facts establishing the existence of probable cause must be contained within the four corners of the affidavit. State v. Duncan, 420 So.2d 1105 (La.1982); State v. Manso, 449 So.2d 480 (La.1984), cert. denied 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984).
[T]he task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit, including the `veracity', `reliability' and `basis of knowledge' of the informant, there is a fair probability that the contraband or evidence will be found in a particular place.
State v. Hernandez, 513 So.2d 312, 316 (La.App. 4th Cir.1987), writ denied 516 So. 2d 130 (La.1987). A search warrant should be tested in a common sense and realistic manner without technical requirements of elaborate specificity. Doubtful or marginal cases should be resolved with a preference for warrants. State v. Huffman, 419 So.2d 458 (La.1982).
In our review of the magistrate's finding of probable cause, we must determine whether the totality of the circumstances set forth in the affidavit is sufficient to allow the magistrate
to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband ... will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis ... for conclud[ing] that probable cause existed.'
(citation omitted). Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 71 L.Ed. 2d 527 (1983). See also State v. Manso, supra.
Relators argue probable cause did not exist to support issuance of the search warrant for Room 105. In the application for the warrant Officer Robertson declared he had spoken to a reliable and confidential source about the retail distribution of cocaine from that room in the Bayou Plaza Hotel. The informant said Terril Roebuck was using the room as a stash pad for a large quantity of cocaine and was making daily deliveries from there to various locations including 2420 Eagle Street, Roebuck's purported residence. Roebuck's female companion, known as Pam, accompanied him and sometimes made runs herself. Two vehicles, a 4-door black Lincoln Town Car (license #A309945) and a 1984 Cadillac Seville (license # 315N159) were used. On some occasions customers would go to the *1251 hotel to buy huge quantities. The confidential informant said he had been in Room 105 within the past three days and had seen a large quantity of cocaine.
In the affidavit Officer Robertson noted Officer Wethern's informant had also said Roebuck was dealing cocaine from 2420 Eagle Street and had a stash pad at a hotel. He checked Roebuck on the computer and found three prior narcotics arrests. A check of the Lincoln showed it was registered to Roebuck's mother, Hattie, whose residence was also listed as 2420 Eagle Street. Officer Robertson recounted in detail the police observations during surveillance on October 8, 1987 which corroborated the informant. He further noted the October 9, 1987 observations, the stop and arrest of Roebuck and Lacour, and the seizure of a large quantity of cocaine and a handgun.
Roebuck correctly argues that the warrant application for Room # 105 does not contain facts to support the informant's reliability. Normally one does not go outside the four corners of an affidavit. However, where there are inadvertent material omissions, the reviewing court will look outside to support or destroy a probable cause finding. State v. Morris, 444 So.2d 1200 (La.1984); State v. Lehnen, 403 So.2d 683 (La.1981); State v. Burleson, 516 So.2d 1159 (La.App. 4th Cir.1987), writ denied 521 So.2d 1168 (La.1988).
Officer Robertson testified that he had known the confidential informant for six months to one year and his information had led to numerous arrests in two cases. Officer Robertson stated he had used the informant in the past to obtain at least two search warrants and paid for the information which had proven reliable.
We will rectify the omission in the application by supplying the missing information provided by Officer Robertson at the motion to suppress hearing (and included in the subsequent warrant application for the Eagle Street addresses) and retest the affidavit for probable cause. See State v. Morris, supra; State v. Lehnen, supra. When the facts relating to the informant's reliability and veracity are added, we find the affidavit sufficient to support the warrant.
The police officers' observations which corroborated the paid informant's detailed information set forth sufficient facts for the magistrate to have a substantial basis for concluding that probable cause existed. We have no reason to think the magistrate's conclusion would have been different with the additional information.
The passage of a few days between the informant's observation and the execution of the warrant does not indicate staleness. Staleness is not an issue unless time passage makes it doubtful the object sought in the warrant will still be in the place where it was observed. State v. Tate, 407 So.2d 1133 (La.1981). Here the officers' observations on the day before and on the day the warrant was executed indicated Roebuck was still using the room as a stash pad. The evidence removed from Room 105 was validly seized pursuant to a search warrant issued upon probable cause.

SEIZURE OF EVIDENCE FROM 2420, 2429 AND 2432 EAGLE STREET
Evidence, contraband and currency were seized pursuant to warrants supported by one common affidavit to search the residences at 2420, 2429 and 2432 Eagle Street. Relators argue probable cause did not exist and even if it did, the intentional misrepresentations in the affidavit require quashing the warrants.
Officer Imbraguglio's affidavit notes Officer Robertson's contact with his "confidential and credible" informant and the proven past "reliability" of the source in resultant arrests and seizure of contraband. The information given the officer is recounted along with the surveillance observations of October 8 and 9, 1987. The arrests of Roebuck and Lacour and the seizure of about one pound of cocaine were also noted.
Officer Imbraguglio stated that during the execution of the warrant for Room 105 they recovered nearly two pounds of cocaine and documents in the names of Terril *1252 Roebuck, Pamela Lacour and Hattie Roebuck. He noted some of the cocaine had been broken into smaller quantities while some remained in a brick form from wholesale distribution. He stated Roebuck and Lacour posted bond and were released after arrest.
The same informant contacted Officer Robertson and told him Roebuck had resumed his operation and continued his pattern of delivery, but had re-located his primary storage location at 2429 Eagle Street. The observations made during the surveillance of October 14-16, 1987 were detailed. The trips by Roebuck and Lacour between the houses, Roebuck's walking up and down the block with a phone, and the numerous stops by vehicles to make pickups, primarily at 2420 Eagle Street, were documented.
Relators take issue with describing Robertson's source as "credible" and "reliable." The conclusion that the source was credible and reliable is apparent particularly after the first information led to Roebuck and Lacour's arrests and the seizure of a large quantity of cocaine.
Roebuck also claims an intentional misrepresentation that documents in the name of Hattie Roebuck were seized in Room 105. Roebuck unpersuasively argues that the fact that the police officers did not testify that they seized documents in Mrs. Roebuck's name means that none were seized. The return on the search warrant for Room 150 indicated "various personal papers" were seized. Nothing was presented to show the falsity of the information. The relators have failed to prove that the affidavit contained false statements to intentionally mislead the magistrate.
Relators also contend that the alleged suspicious activity observed and noted in the affidavit is not sufficient to establish probable cause. That argument is suprious. The affidavit notes that the confidential informant (whose reliability had been proven especially as to his tip leading to the arrests of Roebuck and Lacour at the hotel) earmarked 2420 Eagle Street, Terril Roebuck's residence, and 2432 Eagle Street, Terril's mother's residence, as "retail distribution points." After Roebuck made bond and was released, the same proven informant notified Robertson that Roebuck was back in business with 2429 Eagle Street as his primary storage location.
The affidavit states the officers observed Roebuck walk between 2420 and 2429 Eagle Street. Lacour left 2432, walked to 2429 and entered, and left shortly thereafter to return to 2432 Eagle Street. Almost two hours later she walked back to 2429 Eagle Street. Roebuck walked up and down the block while vehicles stopped at 2420 and suspects entered briefly. One such car was registered to an individual with an arrest for a narcotics violation. One male went to 2420 briefly, walked across to 2429 and then met Roebuck outside. His attention was riveted on something in his hand as he walked back to his car. Activity continued at 2420. Roebuck flagged down a Chevrolet Blazer and talked to the occupants as a pedestrian joined in. Lacour then exited 2429 with a paper bag and handed it to the pedestrian. All three walked away.
Moments later the two were seen walking to 2429 Eagle Street with Lacour carrying a shopping bag. After their entry a male exited 2420 Eagle Street and crossed to 2429 empty handed. Minutes later he returned to 2420 with a brown paper bag. Immediately he left empty handed and drove away in Roebuck's LincoIn parked between 2420 and 2432 Eagle Street.
Officer Robertson testified that the informant had given him all three Eagle Street addresses from the beginning of the investigation. Officer Smith (and his partner Polk) made the principal observations during surveillance on October 14 and 15, 1987 on Eagle Street. Officer Smith testified he saw Terril Roebuck go back and forth from 2432 Eagle Street and believed cocaine was being moved to the residence. He saw Roebuck leave 2420 and go to 2432 a number of times (although he was not sure how many times.)
If those additional facts which came out in the testimony of Officers Robertson and *1253 Smith and were inadvertently omitted from the affidavit are supplied, the probable cause upon which the search warrants were issued would only be strengthened. We find there was a substantial basis for the magistrate to conclude that probable cause existed to search all three addresses under the circumstances present here. We conclude the search of the residences at 2320, 2429 and 2432 Eagle Street were pursuant to valid warrants. Even if this Court found the search warrants defective, the "good faith" exception enunciated in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) would be applicable.
The denial of relators' motions to suppress was correct. Terril Roebuck's application in 88-K-0436 is denied. Pamela Lacour's application in 88-K-0445 is denied. The application of Hattie Roebuck, Donald Roebuck and Marvin Louis in 88-K-0443 is denied.
Our stay order is recalled.
NOTES
[1] The sixth defendant, Evangeline Shy, has not filed a writ.
[2] Although Roebuck requests reversal of the denial of his motion to suppress evidence and his confession, his application relates only to suppression of the evidence. Since we find no error in the ruling on the seizure of evidence, the warrantless entry into the hotel room, and execution of the warrants, there is no basis to suppress any statement made by Roebuck.
[3] Officer Robertson testified Roebuck had five felony drug-related arrests, but no convictions. In the application he noted five felony arrests which included three narcotics violations.
[4] Although Officer Glasser places Robertson at the hotel for the stop or arrest, the other officers (especially Imbraguglio) stated Robertson had left to obtain the warrant.
[5] The first Return indicated $9,986 but an amended Return shows the correct amount was $8,986.