731 So.2d 319 (1999)
STATE of Louisiana
v.
Charles R. MITCHELL.
Nos. 97-KA-2774, 98-K1128, 98-KA-1129.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1999.
*322 Richard P. Ieyoub, Attorney General, State of Louisiana, Darryl W. Bubrig, Sr., District Attorney, 25th Judicial District, Parish of Plaquemines, Pointe-A-La-Hache, Louisiana, and Gilbert V. Andry III, Assistant District Attorney, New Orleans, Louisiana, Attorneys for Plaintiff-Appellees State of Louisiana.
Yvonne Chalker, Louisiana Appellate Project, New Orleans, Louisiana, Attorney for Defendant-Appellant Charles R. Mitchell.
Court composed of Judge ROBERT J. KLEES, Judge WILLIAM H. BYRNES III, Judge STEVEN R. PLOTKIN.
KLEES, Judge.
On June 13, 1996 in # 96-2876 the State filed a bill of information charging the defendant, Charles R. Mitchell (a/k/a Ernest Sparks a/k/a Robert Jones) along with Brenda Carter and Melvin Marvin[1] with *323 possession of marijuana, a violation of La. R.S. 40:966(D), and possession of drug paraphernalia, a violation of La. R.S. 40:1033(C). The same date in # 96-2877 the State filed a bill of information charging the defendant along with Carter and Marvin with possession of cocaine with intent to distribute, a violation of La. R.S. 40:967(A)(1). The same date in # 96-2878 the State filed a bill of information charging the defendant along with Carter and Marvin with illegal possession of stolen things, a gun, valued over $100 but less than $500.[2]
On June 13, 1996 the defendant was arraigned and pleaded not guilty in # 96-2876, 96-2877, and 96-2878. On July 3, 1996 a consolidated hearing on the motions to suppress in # 96-2876, 96-2877, and 96-2878 was held. On July 11, 1996 the motions to suppress evidence for each defendant in each case were denied. Although the record contains a notice of intent to take writs by Mitchell and Carter in # 96-2876, there is nothing to indicate that the applications were filed.
The original bill in # 96-2877 charged possession of cocaine with intent to distribute under La. R.S. 40:967(A)(1). The record contains a granted motion to amend the bill (filed by the State on September 25, 1996 and signed by the judge on September 27, 1996), which amended the bill to charge possession of cocaine over 200 grams with intent to distribute under R.S. 40:967(A)(1) and (F)(b). The record also contains a subsequently granted motion to amend the bill (filed by the State on October 16, 1996 and signed by the judge on October 17, 1996), which charged possession of cocaine over 200 grams under R.S. 40:967(C) and (F)(b). According to the October 22, 1996 minute entry, the State again amended the bill of information to charge possession of cocaine with intent to distribute. The defendant withdrew his former not guilty plea and pleaded guilty in # 96-2877, possession of cocaine with the intent to distribute. The defendant reserved his right to appeal the pre-trial rulings pursuant to State v. Crosby, 338 So.2d 584 (La.1976). The record does not contain a transcript relating to the guilty plea. On January 23, 1997 the trial court sentenced the defendant to fifteen years in the custody of the Department of Corrections with credit for time served. The defendant filed a motion to reconsider sentence.
According to the April 17, 1997 transcript, the defendant withdrew his former not guilty pleas in # 96-2876 and 96-2878, and pleaded guilty. There was no mention of State v. Crosby in the transcript, the minute entry, or the waiver of rights form.[3] The defendant waived the sentencing delays and was sentenced to: six months in the parish jail on Count 1 of # 96-2876, possession of marijuana; six months in the parish jail on Count 2 of # 96-2876, possession of drug paraphernalia; and eighteen months at hard labor on # 96-2878, illegal possession of stolen things. The sentences in # 96-2876 and # 96-2878 were to run concurrently with each other and the sentence in # 96-2877.
On June 4, 1997 the defendant filed a motion for out-of-time appeal in # 96-2876, which was granted. The appeal record was lodged December 8, 1997. A supplemental volume containing the transcript of the hearing on the motions was filed February 26, 1998. Two other records for cases # 96-2877 and # 96-2878 *324 (consolidated here# 98-KA-1128 and # 98-KA-1129) were lodged May 8, 1998.

FACTS
Sgt. Gerald Turlich of the Plaquemines Parish Sheriff's Office testified that on April 11, 1996 he was on patrol about 1:30 a.m. in the area of Barriere Road. He was traveling south on Beta Street when he stopped at a stop sign. He saw a four-door blue station wagon pass in front of him traveling east on Barriere Road heading toward Highway 23. Sgt. Turlich made a left turn onto Barriere Road and went behind the vehicle. He saw a temporary license tag in the rear window, and the tag was "tampered with" or torn. The right half was a good bit lower than the left half. It appeared to be old and not valid. He could not see the expiration date. Sgt. Turlich testified that the first three numbers of the tag, 455, were relatively new numbers, but he had found numerous temporary license tags with those numbers that were not valid. He put on his overhead lights, and the vehicle pulled into a parking lot. Sgt. Turlich pulled in on the side of the vehicle at a right angle. He then saw that the driver was partially turned away from him and leaning over the back seat. Sgt. Turlich asked the driver to step out with his driver's license and registration. The driver, the defendant, handed the officer a Louisiana identification card in the name of Ernest Sparks, but produced no driver's license. The defendant also gave him proof of expired registration in the name of Anita Miller. Meanwhile Sgt. Turlich noticed that the passenger in the back seat was very nervous and was moving back toward the officer and then to the middle of the seat. The back seat passenger, later identified as Merlin Martin, attempted to exit the vehicle once, and the defendant pushed him back into the car. Brenda Carter was the passenger in the front seat.
Sgt. Turlich became suspicious. The officer asked the defendant if he worked at Padua House because Sgt. Turlich had never seen him in the area before. The defendant said that he lived in the Paradise Apartments and was coming from there. He later said that he was coming from Avondale. By this time Deputies Roberts and Williams had come to assist. Sgt. Turlich asked the defendant to step to the rear of the car. Sgt. Turlich then asked Martin, the passenger in the back seat, to step out of the vehicle. Brenda Carter was the passenger in the front seat. Martin stepped out, took two or three steps, ripped open his jacket, and a white substance, which appeared to be cocaine, fell to the ground. Martin started running westbound along Barriere Road, continually dropping the substance. He dropped a bag and his jacket in a parking lot, and he continued running. The officers recovered the cocaine dropped by Martin along with the jacket. Sgt. Turlich and Deputy Roberts pursued him on foot, but they lost him along Colbert Street. A K-9 team was called out, and the dog tracked Martin to a stairway at the Paradise Apartments. However, the dog lost the scent because of a number of police officers smoking in the stairway. Martin was later apprehended by Deputy Roberts after a 107 call, a suspicious person in the area of Barriere Road and Epsilon Street, came over the radio.
Sgt. Turlich returned to the stopped station wagon, and Deputy Williams had secured the scene and placed the defendant and Carter in the front seat in handcuffs. Sgt. Turlich saw in plain view a lot of loose powder chunks on the back seat floorboard along with a scale covered in the powder on the rear driver's side floorboard. The defendant and Carter were arrested and read their rights.[4] Carter and the defendant were separated and asked some questions. Carter said that she and the defendant did not know Martin or that he had cocaine when they picked him up. She stated they were in the area to check out *325 an apartment. The defendant said that he and Carter picked Martin up along the canal and did not know that he had cocaine.
The temporary tag was torn and had been taped together with duct tape. There was no valid brake tag. The car was registered to Brenda Carter, who lived at 606 Barriere Road, Apt. 16. The apartment had been rented to Carter and Robert Jones (the defendant). Sgt. Turlich gave citations to the defendant for operating a vehicle without a driver's license and without a current brake tag. Sgt. Turlich said that the stories told by Carter and the defendant were different and "[n]one of it added up." Sgt. Turlich figured that the defendant and Carter knew Martin.
Sgt. Turlich stated that Deputy Bowers worked with him on an application to obtain a search warrant for Carter's residence after the vehicle had been towed to the lock-up. Sgt. Turlich based the need for a warrant on the fact white powder was found in the vehicle and Martin dropped a large quantity as he ran from the police. A scale covered with the white powder was found in the station wagon. The vehicle was registered to Brenda Carter, who lived on Barriere Road. The officers set up a surveillance for several hours, but they saw nothing suspicious. Sgt. Turlich and the deputies gained access to the apartment by means of the manager's key. The quantity of cocaine recovered from the car, the ground and the apartment was twelve and one-half ounces.
Agent Warren Gilbert, a narcotics officer, testified that the scale in the back seat of the car appeared to be covered by cocaine, and the substance on the back floorboard appeared to be cocaine.[5] He vacuumed out the cocaine from the vehicle. According to Agent Gilbert, Lt. Legreco retrieved the cocaine from the ground. At about 10:00 a.m. he executed the search warrant at Carter's unfurnished apartment, which was located about one-half mile from the location of the traffic stop. Sgt. Turlich had obtained the warrant. The apartment manager opened the door to the apartment. The officers first checked to insure that no one was in the apartment. Agent Gilbert saw two small packets of cocaine in the bedroom closet. The dog team went through, and then the officers searched. They found $2,000 cash underneath a blanket in the bedroom. In the kitchen area they obtained razor blades, baking soda used for cutting cocaine, and some telephone receipts. In the living room area the officers found seventeen packets of cocaine stuffed in the cushion of the sofa. A gun was retrieved from a shoebox in the closet. Pieces of furniture believed to have been purchased with money from the illegal sale of narcotics (receipt showed that the furniture was bought a month before) were taken later in a truck. The gun had been stolen in St. Tammany Parish. Inside the pocket of a lady's black leather jacket the officers found marijuana. From a photo spread the apartment manager, Ms. Hamilton, picked out Carter's photograph as the person who rented the apartment. She also picked out the defendant's photograph after a few seconds as the person living in the apartment. According to Agent Gilbert, the cocaine from the ground and the car weighed approximately five ounces.
Sgt. Curtis Bowers of the Plaquemines Parish Sheriff's Office testified that he assisted Sgt. Turlich. He attempted to obtain fingerprints from the electronic scale, which he took from the left passenger side of the back seat of a blue station wagon that had been seized. He found no prints from the scale covered in cocaine powder. Sgt. Bowers said that the gun seized from Carter's apartment had been stolen in a car burglary on November 2, 1993 in St. Tammany Parish. On April 12, 1996 he noticed that the fingerprint on Sparks' identification card did not match the prints obtained from him on April 11, 1996. He *326 ran the prints and discovered that Sparks was Charles Mitchell, who was wanted in Jefferson Parish on traffic tickets. Mitchell had a lengthy criminal history; he had nine felony arrests and ten misdemeanor arrests. There were two convictions, one for first degree robbery on December 14, 1994. He said that there was also an ongoing case in Rockford, Illinois, where the defendant was a prime suspect in an attempted murder case. There was a warrant for his arrest on aggravated battery with a firearm. Carter had an arrest in Illinois for a narcotic offense. He found no criminal record for Martin. Sgt. Bowers also executed the warrant. The dogs alerted the officers to check the sofa, which contained a large amount of cocaine. Narcotics and a stolen gun were retrieved from a closet in the bedroom. Money was found under some sheets or pillows in the bedroom.
Agent Gary Buras of the Plaquemines Parish Sheriffs Office testified that he took a K-9 search dog to the station wagon to track the third person from the car. He used the jacket, which Martin had dropped, for the scent. The dog picked up the scent and led the officers all the way to the Paradise Apartments. The dog went to a stairwell, but the deputies smoking on the stairwell ruined the scent.
Norma Hamilton, the apartment complex manager, testified that she rented unfurnished apartment 16 to Brenda Carter and Robert Jones. The two moved in about March 10, 1996. The only two people she saw were Carter and Jones; she had seen only one visitor. When the police officers were executing the search warrant, she gave them the key.
The return/receipt for property indicates that the warrant was executed at 10:15 a.m. on April 11, 1996 and the following were seized by Agent Gilbert: 1) two "clear plastic containing white powder"; 2) one cigar with vegetable matter; 3) a black leather jacket with a clear plastic bag with vegetable matter; 4) one .357 Smith & Wesson; 5) one clear plastic bag with 17 one-quarter ounce bags of white powder; 6) one phone book; 7) assorted papers; 8) one empty box of baking soda; 9) one box of sandwich bags; 10) $2,000 U.S. currency; and 11) a couch and a loveseat.

ERRORS PATENT
A review of the record reveals none.
The defendant raises only one assignment of error. He contends that the trial court erred when it denied the defendant's motion to suppress evidence. He argues that Sgt. Turlich did not have reasonable cause for the stop and therefore the search warrant, based upon evidence seized pursuant to that stop, was invalid. He contends that there were material misrepresentations and omissions in the affidavit upon which the warrant issued.
An individual cannot be stopped in his vehicle by a police officer, who does not have a warrant, unless the officer has reasonable suspicion that the individual is committing, has committed, or is about to commit a criminal offense, including the violation of a traffic regulation. La. C.Cr.P. art. 215.1; State v. Mock, 95-2156 (La.App. 4 Cir. 5/29/96), 675 So.2d 819. See also State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879. See generally Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Andrishok, 434 So.2d 389 (La.1983); State v. Smith, 94-1502 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078.
Reasonable suspicion for an investigatory stop is something less than probable cause. It must be determined under the facts of each case whether the officer had sufficient articulable knowledge of particular facts and circumstances to justify an infringement upon an individual's right to be free from governmental interference. State v. Albert, 553 So.2d 967 (La.App. 4th Cir.1989). The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Belton, 441 So.2d 1195 (La.1983), cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d *327 543 (1984); State v. Anderson, 96-0810 (La.App. 4 Cir. 5/21/97), 696 So.2d 105. An investigative stop must be justified by some objective manifestation that the person stopped is or is about to be engaged in criminal activity, or else there must be reasonable grounds to believe that the person is wanted for past criminal conduct. State v. Moreno, 619 So.2d 62, 65 (La. 1993). See also State v. Eddie, 96-2787 (La.App. 4 Cir. 4/30/97), 694 So.2d 503.
In order for an object to be lawfully seized pursuant to the "plain view" exception to the Fourth Amendment, (1) there must be a prior justification for the intrusion into a protected area; (2) in the course of which the evidence is inadvertently discovered; and (3) where it is immediately apparent without close inspection that the items are evidence or contraband. State v. Hernandez, 410 So.2d 1381, 1383 (La.1982). "In Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the Court held that evidence found in plain view need not have been found inadvertently in order to fall within this exception to the warrant requirement, although in most cases evidence seized pursuant to this exception will have been discovered inadvertently." State v. Tate, 623 So.2d 908, 917 (La.App. 4 Cir.1993), writ denied, 629 So.2d 1126 and 1140. See also State v. Harris, 97-1620 (La.App. 4 Cir. 8/27/97), 700 So.2d 222.
Evidence abandoned by a citizen and recovered by the police as a direct result of an unconstitutional seizure may not be used in a resulting prosecution against the citizen. When the citizen is stopped without reasonable cause or when a stop without reasonable cause is imminent, the right to be left alone is violated and renders unlawful any resultant seizure of abandoned property. State v. Tucker, 626 So.2d 707 (La.1993) (opinion reaffirmed and reinstated on rehearing). See also State v. Chopin, 372 So.2d 1222 (La.1979). If property is abandoned without a prior unlawful intrusion into a citizen's right to be free from governmental interference, then it can be lawfully seized. There is no expectation of privacy and no violation of a person's custodial rights. State v. Britton, 93-1990 (La.1/27/94), 633 So.2d 1208; State v. Andrishok, 434 So.2d at 389; State v. Chopin, 372 So.2d at 1222.
An actual stop occurs when an individual submits to a police show of authority or is physically contacted by the police. While the Fourth Amendment only protects individuals from "actual stops" by police officers, California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), our Louisiana Constitution also protects individuals from "imminent actual stops." State v. Tucker, 626 So.2d at 712. An "imminent actual stop" occurs "when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain...." Id. at 712. To determine whether an actual stop of an individual is imminent, the following factors (although non-exhaustive) may be employed in determining whether that force was virtually certain to result in an actual stop of an individual:
(1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter.
Id. at 712-713.
Probable cause exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested *328 has committed a crime. State v. Wilson, 467 So.2d 503 (La.1985), cert. den. Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985); State v. Blue, 97-2699 (La.App. 4 Cir. 1/7/98), 705 So.2d 1242, writ denied, 98-0340 (La.3/27/98), 716 So.2d 887, 1998 WL 279251.
Constructive possession is sufficient to meet the element of possession of narcotics. A person may be in constructive possession even if he is not in physical possession, if the cocaine is subject to his control or dominion. State v. Bell, 566 So.2d 959 (La.1990). The factors to be considered in determining whether a defendant exercised control over drugs are: the defendant's knowledge that the illegal drugs were in the area; the defendant's relationship with the person in actual possession; the defendant's access to the area where the drugs were found; evidence of recent drug use; the defendant's proximity to the drugs; and evidence that the residence was being frequented by drug users. State v. Harris, 585 So.2d 649 (La.App. 4 Cir.1991). See also State v. James, 604 So.2d 180 (La.App. 4 Cir.1992).
A search incident to arrest could encompass a search of the interior of the automobile when the arrestees remain in proximity to the car. State v. Roebuck, 530 So.2d 1242 (La.App. 4 Cir.1988), writs denied, 531 So.2d 764 (La.1988). The police may search the passenger compartment of a car and any containers therein even though the occupant has been removed as long as the former occupant was lawfully arrested and had been an occupant just prior to that arrest. State v. Alaimo, 95-1044 (La.App. 4 Cir.6/29/95), 657 So.2d 1102, 1104 (La.App. 4 Cir.1995), citing New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).
Sgt. Turlich had reasonable cause to stop the blue station wagon with a temporary license tag, which looked torn. In fact the tag had been torn in half and taped back together with duct tape. Although it had current numbers, Sgt. Turlich testified that it was easy to obtain temporary tags, and he had found that numerous tags with those numbers were not valid. Once he had stopped the vehicle, Sgt. Turlich was justified in asking the driver, the defendant, to step out of the vehicle and to produce his driver's license and the car's registration. The defendant, who had previously turned away from the officer and bent all the way over the back seat, produced an identification card, not a driver's license. The passenger in the back seat was moving around very suspiciously; he had attempted to exit the vehicle before, but the defendant had pushed him back inside the car. When the back seat passenger, Martin, stepped out of the car, he took one or two steps, dropped a white rock, ran, dropped what appeared to be cocaine and a jacket, and continued to run. After an unsuccessful chase on foot, Sgt. Turlich returned to the car and saw in plain view on the back seat floorboard an electronic scale covered with what appeared to be cocaine powder, along with cocaine Martin had dropped inside the car and next to the vehicle. Under the circumstances there was a prior justification for the intrusion into the protected area. The cocaine and the scale were in plain view on the floorboard of the back seat of the car, and it was immediately apparent that the white rock and powder were cocaine and the scale was an instrument used to weigh illegal narcotics. At that point the officer's reasonable suspicion had ripened into probable cause to arrest for possession of cocaine with the intent to distribute.
In fact the State argues that the vehicle was searched incident to arrest. Sgt. Turlich testified that the defendant and Carter were handcuffed when he returned from the chase, which would constitute an arrest. At that point in time the officers had retrieved a white rock dropped next to the car by Martin, the back seat passenger, as he exited the vehicle. Martin continued to drop white substance as he ran until he dropped a quantity *329 of the substance along with his jacket in a parking lot. That cocaine, abandoned by Martin as he ran from police officers, was legally seized. The rock next to the car tested positive for cocaine. The officers had probable cause to arrest, and a search of the car incident to arrest was valid. The cocaine recovered from the car and the street was validly seized along with the electronic scale taken from the vehicle.
Based upon the information he had obtained and the seized cocaine and scale, Sgt. Turlich then filed for a search warrant. La.C.Cr.P. art. 162 provides that a search warrant may be issued "only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for the issuance of the warrant." Probable cause exists when the facts and circumstances within the affiant's knowledge, and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence or contraband may be found at the place to be searched. State v. Duncan, 420 So.2d 1105 (La.1982). See also State v. Roebuck, 530 So.2d at 1242.
The facts which form the basis for probable cause to issue a search warrant must be contained "within the four corners" of the affidavit. Duncan, supra at 1108. A magistrate must be given enough information to make an independent judgment that probable cause exists for the issuance of the warrant. State v. Manso, 449 So.2d 480, 482 (La. 1984), cert. denied, Manso v. Louisiana, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984). The reviewing Court must determine whether the "totality of circumstances" set forth in the affidavit is sufficient to allow the magistrate to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him that there is a reasonable probability that contraband will be found. The duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis" for concluding that probable cause existed. Manso, supra at 482.
State v. Page, 95-2401 (La.App. 4 Cir. 8/21/96), 680 So.2d 700, 709-710, writ denied, 96-2352 (La.2/2/97), 688 So.2d 522.
A magistrate's determination of probable cause should be accorded great deference by a reviewing court. State v. Andrews, 97-2321 (La.App. 4 Cir. 11/13/97), 703 So.2d 137. In considering a magistrate's finding of probable cause, the reviewing court must determine whether the totality of circumstances set forth in the affidavit is sufficient to allow the magistrate: "to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a reasonable probability that contraband ... will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis" for ... concluding that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).
Making a material and intentional misrepresentation to a magistrate involves a fraud upon the courts and will result in the invalidation of the warrant and suppression of the items seized. State v. Byrd, 568 So.2d 554 (La.1990); State v. Brown, 93-2089 (La.App. 4 Cir. 12/16/94), 647 So.2d 1250. "Intentional" means a deliberate act designed to deceive the issuing magistrate. State v. Lamartiniere, 362 So.2d 526 (La.1978); State v. Ceasar, 97-1506 (La.App. 4 Cir. 9/24/97), 700 So.2d 242. However, if the misrepresentations or omissions are inadvertent, the warrant will be retested for probable cause after supplying that which had been omitted or striking that which had been misrepresented. State v. Lingle, 436 So.2d 456 (La. 1983).
In his affidavit Sgt. Turlich stated that he stopped a blue older model Chevrolet *330 station wagon because the temporary license plate was torn. After he made the traffic stop, the driver leaned over the seat toward the passenger in the back seat. The driver produced an identification card with the name of Eugene Sparks and said that he was coming from the Paradise Apartments where he lived. Sgt. Turlich declared that the passengers in the car were moving around inside the vehicle. The back seat passenger attempted to exit the car, but the driver shoved him back into the vehicle. Sgt. Turlich had the driver step to the rear of the car, and the back seat passenger was asked to step outside. The passenger stepped out and opened his jacket; a white rock fell out and the man began running. Sgt. Turlich and Deputy Roberts chased him on foot. As the suspect ran, the white substance continued to fall. He then dropped a clear plastic bag of the white substance along with his jacket in the parking lot of a pawnshop. The subject eluded the officers, who called in a K-9 search dog. The dog tracked that subject to a stairway at the Paradise Apartments. The station wagon was registered to Brenda Carter whose address was 606 Barriere Road, apt. 16. Apartment 16 was rented to Brenda Carter and Robert Jones. Sgt. Turlich stated that inside the vehicle in the passenger area was found more white rock-like substance. The brick dropped by the back seat passenger next to the car was field tested to be cocaine.
The defendant argues that Sgt. Turlich erroneously stated in the affidavit that a scale and a white rock-like substance were found in the passenger area of the car, which implied that they was found in the front passenger area where Carter was sitting. Actually the scale and white substance were on the back seat floorboard. The defendant argues that the inference that the cocaine was in Carter's area of the car coupled with the fact that the vehicle was registered in her name at an address in the Paradise Apartments (to which the K-9 tracked Martin) helped to obtain the warrant.
It is not clear that Sgt. Turlich misrepresented the facts. The affidavit states only that the scale and contraband were found in the passenger area. Both the back and front seats of a car have passenger areas, and Sgt. Turlich also noted in his affidavit that the back seat passenger dropped a white rock-like substance next to the vehicle.
Under the totality of the circumstances set forth in Sgt. Turlich's affidavit, the judge had enough information to make an independent determination that there was a reasonable probability that contraband would be found in the apartment. The trial court had a substantial basis for concluding that probable cause existed. The warrant was properly issued. The marijuana, the cocaine, the handgun, and other items were validly seized pursuant to the warrant.
The trial court properly denied the defendant's motion to suppress evidence in case # 96-2877, possession of cocaine with intent to distribute. Although it is not clear that the defendant reserved his right to appeal the ruling in his guilty pleas in counts 1 and 2 of # 96-2876, possession of marijuana and possession of drug paraphernalia, and # 96-2878, illegal possession of stolen things valued over $100 but less than $500, the trial court properly denied the motions to suppress evidence in those cases as well.
Accordingly, for the reasons expressed above, we conclude that the trial court properly denied defendant's motions to suppress evidence and the pleas of guilty and sentences are hereby affirmed.
AFFIRMED.
NOTES
[1] The name is Melvin Marvin in the bill of information, but elsewhere the name appears to be Melvin Martin.
[2] The same date in # 96-2879 the State charged the defendant with operating a vehicle with an expired inspection certificate, a violation of La. R.S. 32:1304(E), operating a vehicle without a driver's license, a violation of La. R.S. 32:411, and misrepresentation during booking, a violation of La. R.S. 14:133.2. # 96-2879 was one of three cases to which the defendant pleaded guilty on April 17, 1997, but it involved misdemeanors and that case has not been consolidated with the others on appeal. In # 96-2879 the defendant was sentenced to ninety days on each of those charges with the sentences to run concurrently.
[3] It is not clear the defendant has a right to an appeal in those cases.
[4] In other testimony Sgt. Turlich stated that he looked in the vehicle and checked the registration after the defendant and Carter had been arrested.
[5] We note that pages 42 and 44 of the hearing transcript are missing.