525 So.2d 84 (1988)
STATE of Louisiana, Plaintiff-Appellee,
v.
Jerrell A. LAMBRIGHT, Defendant-Appellant
No. CR87-842.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1988.
*85 Warren J. Hebert, Baton Rouge, for defendant-appellant.
Linda C. Fowler, Asst. Atty. Gen., Dept. of Justice, Crim. Div., Baton Rouge, for plaintiff-appellee.
Before GUIDRY, YELVERTON and KNOLL, JJ.
YELVERTON, Judge.
Defendant, Jerrell A. Lambright, pleaded guilty to five counts of forgery, reserving his right to appeal the denial of a motion to suppress. After sentence, defendant filed this appeal, the single assignment of error being the ruling on the motion to suppress.
Lambright moved to suppress the evidence against him, which included some bank statements, which he claimed were seized without probable cause and without a search warrant. At the hearing on the motion the following facts were adduced.
Lambright was an investigator for the office of the district attorney for the 36th Judicial District Court, Beauregard Parish. On November 27, 1985, he was terminated by the District Attorney, William Pegues, following a dispute over unauthorized phone calls. District Attorney Pegues ordered Lambright to clear his desk and leave. During the rest of that day Lambright moved, going to and from his office. Finally, he brought to the District Attorney his car keys, post office key, office keys, and credit cards, and left. He never came back.
Jean Cagle, secretary at the district attorney's office, testified that on the day Lambright was terminated she saw him removing his personal things from the office and that he came back later in the day and took some things, telling her he was taking his things and would not be back.
Assistant District Attorney Keith Milam testified that Lambright took all of his *86 personal things from that office when he was terminated. He identified what he meant by "personal things" as photographs of children and their activities, things his children made, plants, and things of that nature. He said Lambright made "two or three runs down the stairs". Then he turned over the keys to Pegues in Milam's presence and told Pegues something to the effect "I've got everything".
On the following Sunday, Pegues went to his office, as was his frequent practice, to work, and decided to check defendant's former office. He found mostly throw away trash in the drawers. There were also some opened bank statements in envelopes bound by a rubber band, with Lambright's name and the district attorney's DeRidder post office address on them observable through the glassine window. Knowing that this address was reserved for official mail, and thinking that the statements might have been related to the office, Pegues looked at the statements and some associated deposit slips and was immediately struck by the coincidence that deposits were repeatedly in the amounts of $36 or multiples thereof. The standard Sheriff's Department court cost in that judicial district was $36. Looking further, Pegues found cancelled personal checks in the bank statements written by Lambright and then realized that the statements were on a Lambright personal bank account.
Pegues readily stated that when he first saw the statements he had no probable cause to believe that they contained evidence of a crime. He did not then know, however, whether or how the statements might pertain to the business of the district attorney's office, and he said he felt it was his duty to find out.
Lambright testified. He said he was very upset after the confrontation with Pegues that day, that it was not his intention to leave the bank statements in the desk, and that the reason he left them was because he forgot them.
Pegues took the statements into his office. He then checked at random in the worthless check files in the office, where he found copies of some letters from Lambright to the Sheriff authorizing the closing of worthless check files. Pegues testified at the trial that he had never given Lambright authority to direct the closing of those files. Only in rare cases, testified Pegues, did he allow the closing of worthless check files without requiring the payment of court costs.
The bank statements led to the forgery charges against Lambright.
The district attorney is a governmental official and is therefore subject to the strictures of the Fourth Amendment and Art. 1 Sec. 5 of the La. Const. of 1974. O'Connor v. Ortega, ___ U.S. ___, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987); State v. Mora, 307 So.2d 317 (1975), remanded for clarification 423 U.S. 809, 96 S.Ct. 20, 46 L.Ed.2d 29, on remand 330 So.2d 900 (La. 1976), cert. den. 429 U.S. 1004, 97 S.Ct. 538, 50 L.Ed.2d 616 (1976). The U.S. Supreme Court has recently held in O'Connor v. Ortega, supra, that searches and seizures by government employers or supervisors of the private property of their employees are subject to Fourth Amendment restraints. There can be no question that such conduct is likewise subject to similar restraints under the right to privacy provision of the Louisiana Constitution.
The O'Connor v. Ortega case likewise holds that a public employee may have a reasonable expectation of privacy in his office and in his desk, and that in such a case, any search of those places conducted by a public employer must be judged by the standard of reasonableness.
The first inquiry, therefore, that we must make in this case is whether Lambright, a former public employee, had a reasonable expectation of privacy in the bank statement which he forgot and left in the desk (it could hardly be argued that he any longer had a reasonable expectation of privacy in his desk). If we find that he did have a reasonable expectation of privacy in this item, then the second inquiry we will have to make is whether the search conducted by Pegues, a public employer, was reasonable under the circumstances.
*87 The test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but also whether that expectation is of a type which society at large is prepared to recognize as being reasonable. State v. Brown, 395 So.2d 1301 (La.1981).
We hold that defendant had no reasonable privacy interest in the bank statements under the circumstances of this case. The envelopes were unsealed, bound together only by a rubber band, readily identifiable through the glassine window as bearing the official address of the district attorney's office, and bearing no indicia, other than defendant's name, that they were private and unrelated to the office. As stated in O'Connor v. Ortega, supra, "... the privacy interests of government employees in their place of work ... are far less than those found at home or in some other contexts.... Government offices are provided to employees for the sole purpose of facilitating the work of an agency. The employee may avoid exposing personal belongings at work by simply leaving them at home." 107 S.Ct, at 1502.
We agree with the trial judge in the present case that the defendant had no reasonable expectation of privacy in the bank statements, and that therefore the search was not an intrusion.
Although we need not do so, we will briefly address the question of whether the search itself was reasonable. Once he opened the desk drawer and discovered that something was in it, Pegues was justified in determining what the item was. It was no doubt easy to see that the item was a collection of bank statements, just from the likeness of the envelopes, their number, and their return address, but to determine the name of the account that the bank statements reflected required examination of the name as it appeared through the glassine window. The name and address of the account left in doubt whether it was personal or office-related. Further inquiry, which required looking inside one of the envelopes, was necessary. This immediately revealed evidence which this public employer who happened to be a District Attorney recognized as evidence of a crime. We find that the search was not only justified at its inception, but also reasonable in its scope. See New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).
The motion to suppress was properly denied.
AFFIRMED.