liBYRNES, Judge.
The State requests of review of the trial court’s ruling which granted Kevin Dillon’s motion to suppress the evidence. We reverse and remand.

FACTS

Just before 8:00 p.m. on November 3,1997, police officers were on patrol in the Fischer Project. They observed a car in the 2100 block of Leboeuf Court which began speeding when the officers pulled behind it. Although the speed limit was 25 miles per hour and there were speed bumps on the streets in the project, the driver began driving 50 miles per hour. The police officers activated their vehicle’s siren. Although the driver did not immediately heed the siren, he suddenly stopped the car just short of the Orleans Parish line. When the driver abruptly stopped, the driver immediately ducked down towards the middle of the car and then sat up in the seat.
The officers approached the car and ordered the driver to exit. One of the officers noticed an open beer bottle on the floorboard of the driver’s side. The driver exited the car, and one of the officers walked him to the police car and frisked him, while the other officer remained next to the passenger side of the suspects’ car. The officer arrested the driver for reckless operation of a vehicle, a seat belt violation, driving a car without a license plate, driving a car ^without a brake tag, and drinking out of an open alcoholic beverage container while in a vehicle. The officer handcuffed the driver and placed him in the back of the police car.
The officer then joined his partner at the vehicle. The officers ordered the passengers, the defendant Kevin Dillon and an unidentified female, also to exit the car. They complied, and as Dillon was exiting from the backseat, the officers saw a second beer bottle on the backseat floorboard near where Dillon had been sitting. The officers took Dillon and the woman to the back of the car and conducted pat down searches of both suspects. Finding nothing, the officers returned to the car and began searching it for weapons and contraband. Under the front passenger seat, towards the rear seat, the officers discovered a “blunt”, a hollowed-out cigar filled with what was later found to contain contraband. The officers testified Dillon then stated that the “blunt” was his and that the other occupants of the car were not aware of its existence. After being advised of his rights, Dillon waived his rights and told the officers he had purchased the “blunt” from a breezeway at 2120 Leboeuf Court.
At the suppression hearing on March 26, 1998, the officers testified that the police decided to search the interior of the car, after the driver had been arrested and placed in the back of their car, for their safety and the safety of the passengers and to determine if the car contained contraband. Both officers characterized the search as “incidental to [the driver’s] arrest” and as encompassing the “arm span, wing span” of the occupants of the car. One of the officers acknowledged that the “blunt” was not in plain view, but rather it was found during a search of the car.
|3The trial court suppressed the evidence because it found that the officers were not *1066 justified in searching the car after the occupants had been removed from the car and the driver had been arrested.

SEARCH AND SEIZURE

Investigatory Stop

The State contends that the search was permissible as an extension of a Terry[1] investigatory stop for the officers’ safety. The State further asserts that the discovery of the evidence led to the defendant’s spontaneous statement that the blunt belonged to him.
The police officer’s stop of the car, the removal of the driver and the passengers, and the arrest of the driver for the moving violations and the open container violations were lawful. The officers observed that the driver was speeding in a car which had no license plate or brake tag, and they had probable cause to stop and arrest (or ticket) him for these violations.
La.C.Cr.P. art. 215.1 provides:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.
D. During the detention of an alleged violator of any provision of the motor vehicle laws of this state, an ^officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity. However, nothing herein shall prohibit a peace officer from compelling or instructing the motorist to comply with administrative or other legal requirements of Title 32 or Title 47 of the Louisiana Revised Statutes of 1950.
If an officer stops a person pursuant to art. 215.1, the officer may conduct a limited pat down frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La.C.Cr.P. art. 215.1(B). “Reasonable suspicion” for an investigatory stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient articulable facts within his knowledge to justify an infringement of the suspect’s rights. State v. Matthews, 94-2112 (La.App. 4 Cir. 4/26/95), 654 So.2d 868; State v. Vance, 93-1389 (La. App. 4 Cir. 2/25/91), 633 So.2d 819.
In assessing the reasonableness of an investigatory stop, the court must balance the need to search and seize against the invasion of privacy that the search and seizure entails. State v. Tucker, 604 So.2d 600 (La.App. 2 Cir.1992), affirmed in part, reversed in part on other grounds, 626 So.2d 720 (La.1993); State v. Washington, 621 So.2d 114 (La.App. 2 Cir.), writ denied, 626 So.2d 1177 (La.1993). The intrusiveness of a search is not measured so much by scope as it is by whether it invades an expectation of privacy that society is prepared to recognize as reasonable. Twenty-Three Thousand Eight Hundred Eleven and No/100 ($23,811) Dollars in U.S. Currency v. Kowalski, 810 F.Supp. 738 (W.D.La.1993).
| gin reviewing the totality of circumstances, the officer’s past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Jackson, 26,138 (La.App. 2 Cir. 8/17/94), 641 So.2d 1081. The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determina *1067 tion of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La.App.,4 Cir.), writ denied, 578 So.2d 131 (La.1991). Flight, nervousness, or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to stop under La.C.Cr.P. art. 215.1. State v. Belton, 441 So.2d 1195 (La.1988), certiorari denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Noto, 596 So.2d 416 (La.App. 4 Cir.1992), State v. Preston, 569 So.2d 50 (La.App. 4 Cir.1990).
In State v. Ganier, 591 So.2d 1328 (La. App. 4 Cir.1991), police officers were patrolling a housing project in New Orleans known to be a center of drug trafficking. The defendant saw the officers, turned “suspiciously”, began to walk away slowly, and then began to run. The officers chased the defendant until he was apprehended. This court found that two factors were sufficient to justify a stop of the defendant: the area’s reputation for drug trafficking, and the suspicious actions of the defendant. This court noted:
... Drug activity and crimes which it generates have become a major problem endangering innocent people and severely taxing police resources. Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action pf fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not a case of a man merely standing on a street comer who is detained by the police simply because he is there.
| State v. Ganier, 591 So.2d at 1330.
The test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but, rather whether that expectation is of a type which society at large is prepared to recognize as being reasonable. State v. McKinney, 93-1425 (La.App. 4 Cir. 5/17/94), 637 So.2d 1120, writ denied 97-1339 (La.12/19/97), 706 So.2d 444; State v. Lambright, 525 So.2d 84 (La. App. 3 Cir.), writ denied 530 So.2d 83 (La.1988). Deference should be given to the experience of the policemen who were present at the time of the incident. A certain look or gesture may not mean anything to the ordinary person; however, a policeman has sound judgment based on long experience to interpret these acts. An officer should react for his safety under the conditions and events as they occur. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549.

Search of a Vehicle for Weapons Incidental to a Terry Investigatory Stop

In Michigan v. Long, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983), the United States Supreme Court extended a Terry search to automobiles and found that a “search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on ‘specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant’ the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons” [citing Terry v. Ohio, supra, 88 S.Ct. at 1880].
In State v. Archie, 477 So.2d 864 (La.App. 4 Cir.1985), this court adopted Long. The officers stopped a car in a high crime area due to ajvbent license plate. As the driver stopped the car, the passenger (the defendant) reached down to the floor of the car. The officers ordered the occupants out of the car and searched it, finding a loaded gun under the defendant’s seat. This court upheld the search under Long, noting:
Here the officers were in a high crime area at night and they knew defendant had hurriedly hidden something under the seat as they approached him. They were not obliged to let him reenter the car without checking to see what he had placed under the seat considering the real possibility that they might be in danger.
Archie, 477 So.2d at 865-866.
In State v. Williams, 489 So.2d 286 (La.App. 4 Cir.1986), officers saw a narcotics transaction and then saw one of the participants enter a car and drive from the scene. The officers followed and stopped the car. As the officers stopped the car, they saw the *1068 passenger reach down toward the floor and try to conceal something. The officers ordered the occupants out of the ear and found a gun on the floor. On review, this court upheld the search, finding the officers were justified in checking the car for weapons.
In State v. Davis, 612 So.2d 256 (La.App. 4 Cir.1992), the defendant was speeding, and as the officers pulled next to him to waive him over to stop, they saw him reach down and place something under the seat. The officers stopped the car, ordered the defendant out of the car, and searched under the seat, finding contraband. Based upon this court’s ruling in Archie, this court upheld the search.
In State v. Scull, 93-2360 (La.App. 4 Cir. 6/30/94), 639 So.2d 1239, writ denied 94-2058 (La.11/11/94), 644 So.2d 391, this court invalidated a search of a car’s glove compartment during an investigatory stop. This court found the stop itself was valid, but the search of the glove compartment was not |8valid because the defendant placed the object in the glove compartment before he became aware of the officers’ presence. This court distinguished Davis, finding that the action of placing an object in the glove compartment was not an evasive move made to secrete something from the police. In addition, unlike in Davis, there was no indication that the officers thought there might be weapons in the glove compartment.
The facts in the present case provide more than a situation where a person is stopped by a police officer just because he is driving on the street. The officers had reasonable suspicion to stop the vehicle for the traffic violations. The beer bottles, which were in plain view when the occupants left the vehicle, gave the officers probable cause to arrest the driver and Dillon for municipal violations in addition to the traffic violations.
The officers noted that the vehicle was speeding through the Fisher housing project. The officers articulated that the investigatory stop took place in a high crime area. The officers also articulated actions which led them to believe that the driver was acting suspiciously. The officers related that after a short high speed chase, the driver stopped the vehicle suddenly and leaned toward the middle of the seats as if to conceal something. In the present ease the officers were justified in first ordering the driver and then the passengers from the car and searching the vehicle for weapons for their safety incidental to an investigatory stop.
In State v. Alaimo, 95-1044 (La.App. 4 Cir. 6/29/95), 657 So.2d 1102, officers observed the defendants’ car make a left turn from the right lane. The officers made a U-turn and followed the car, which then made a U-tum itself. The officers followed and activated their car’s lights and siren. The defendants’ 19car did not stop until it had traveled a few blocks, and during those few blocks the officers saw the defendants “fumbling” in the car. When the car stopped, the driver immediately exited the car and walked back to the police car, while the passenger remained in the car. The driver stated he had no driver’s license and begged the officers not to take him to jail. The officers frisked the driver, found no contraband, and then determined that he had no license or insurance, and his car had no license plate or brake tag. The officers placed him under arrest for the traffic violations. They then walked back to the car, inside of which the passenger had remained, ordered him out of the ear, and searched the car, finding two tinfoil packets of heroin in the ashtray. The trial court suppressed the evidence, and on review the State argued that the search of the car was permissible under Davis. This court reject- ' ed this argument, stating:
The State’s claim that the fumbling motions observed by the officer caused them immediate apprehension that the occupant of the vehicle had access to weapons, is not borne out by the record. Why would an apprehensive officer have ordered that the passenger remain in the car giving the passenger ample opportunity to gain access to weapons that might be secreted within?
Alaimo, 95-1044, p. 2, 657 So.2d at 1103.
In that case, the officers did not state whether the stop took place in a high crime area, which coupled with the suspicious actions of the driver, would have provided reasons why the officers feared for their safety to allow a *1069 legally permissible search for weapons in the vehicle as provided in the present case.

Search for Weapons Incidental to Probable Cause to Arrest

In Alaimo, supra, this court further found the search could have been justified if the officers had probable cause to arrest the driver, and it remanded the case to the trial court for a finding on that issue. This court noted:
|10... The authority for such a search was discussed by this court in State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir.), writs denied, 531 So.2d 764 (La.1988). Citing New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), our court held that a search incident to arrest could encompass a search of the interior of the automobile when the arrestees remain in proximity to the car. In State v. Caballero, 464 So.2d 939 (La.App. 4th Cir.1985), we upheld the search of a tote bag in the trunk of the defendant’s vehicle, and in State v. Smith, 489 So.2d 966 (La.App. 4th Cir.1986) we upheld the search and opening of a container containing drugs incident to arrest. Both Caballero and Smith were traffic stops leading to the resultant search. The United States Supreme Court clearly held in Belton, supra that the police may search the passenger compartment of a car and any containers therein even though the occupant has been removed, so long as the former occupant was lawfully arrested and had been an occupant just prior to that arrest. Thus, if, as it appears, Officer Williams had probable cause to arrest the driver of the vehicle for numerous traffic violations, the search of the passenger compartment of the car was legally permissible and the heroin found in the ashtray is not subject to suppression.
Alaimo, 95-1044, p. 3, 657 So.2d at 1103-1104.
In Roebuck, also cited in Alaimo, the defendants’ actions, combined with a detailed tip from an informant, gave the officers probable cause to arrest them. After the officers stopped their car and arrested suspects, the officers searched their vehicle. This court upheld this search, stating:
A search incident to arrest could encompass a search of the interior of the automobile (for the paper bag and purse) when the arrestees remain in proximity to the car. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); State v. Drott, 412 So.2d 984 (La.1982). Although Roebuck and Lacour were removed from the car, they were standing on each side of the car. The driver’s door was open as Roebuck was frisked against that side of the car., The search of the brown bag and the purse on the car seat was valid as a search incident to arrest. See State v. Wilson, 457 So.2d [75] at 77 [ (La.App. 4 Cir.1984), writ den. 462 So.2d 208 (La.1985) ].
Roebuck, 530 So.2d at 1248.
|11 In Wilson, cited in Roebuck, the officers had probable cause to stop and arrest the defendant for prostitution. As they approached the defendant’s car, one officer noticed the defendant placing a gun under the seat. The officers ordered the defendant out of the car and searched the car, finding the gun. This court upheld this search, finding the search was conducted almost simultaneously with the arrest of the defendant, while the defendant was in close proximity to the interior of the car.
In Drott, also cited in Roebuck, the officers had probable cause to arrest the defendant for theft, and within a minute of stopping him and arresting him, one officer looked inside his vehicle and saw evidence linking him to the theft. The Court upheld this search, not on plain view grounds, but as a valid search incident to the contemporaneous arrest which occurred in close proximity to the vehicle.
In the present case, Officer Scott Seymour explained that the vehicle was speeding, going 50 mph in a 25 mph speed limit area where “there’s kids that often play in the back of these courtyards.” Officer Seymour stated that: “[the driver] subsequently came to an abrupt stop. Immediately the driver began to duck down towards the floorboard. It appeared either he was looking to retrieve something or either conceal something from *1070 around the seat area.” Officer Troy Smith also testified that: “Before ordering the driver out and the stop, we saw the driver lean down towards the middle of the seats” as if he were trying to conceal something.
In Alaimo, supra, the officers’ expression of fears for their safety was discounted by their allowing the defendant and the female passenger to remain in the ear until after the driver had been arrested, handcuffed, and placed in the l^back of the police car. In Alaimo the police were patrolling the Paris Avenue area, and the vehicle was stopped at approximately twelve noon. In the present case the officers were patrolling the Fisher project just before 8:00 p.m. in November, when it was dark. It would be more difficult to see what the driver was doing at night when he leaned over, and it would have been easier for the driver to conceal his actions. In a high crime area it was imprudent for the officers to allow the passengers to remain in the car at all. But that indiscretion does not discount or negate the fact that the officers were in a dangerous situation in the high crime area when the driver had speeded up and then leaned over as if concealing something in the car. The officers articulated reasons for fear of their safety so that the search of the vehicle for weapons was justified pursuant to an investigatory stop.
Further, in Alaimo, id., this court found the search could have been justified if the officers had probable cause to arrest the driver, and it remanded the case to the trial court for a finding on that issue.
In the present case, there was probable cause to arrest the driver. The search was justified as there was need to search the car prior to allowing the subjects to reenter it and possibly have access to weapons. The driver had been arrested, handcuffed, and placed in the back of the police car before the officers searched his car. The search was incidental to the driver’s arrest. The driver had leaned over and appeared to be hiding something. The stop was made in a high crime area. The driver could have placed a weapon under the front passenger’s seat or he could have handed a weapon to one of the passengers who could have placed it in the area. The object was within the “grabbing area” or “wing span” of the driver and passengers.
li.^The officers had probable cause to arrest the driver as well as Dillon when the officers saw one open beer bottle in the front driver’s floor board, and the second open beer bottle in the backseat near where Dillon had been sitting when he exited the car. The vehicle was stopped coming from the Fisher housing project in a high crime area and the officers gave reasons why they believed that the driver acted suspiciously. The officers had reason to believe that they should take precautions for their safety, and the seizure of the blunt was justified as a result of the search for weapons under the totality of circumstances either as incidental to a Terry investigatory stop, or incidental to the existence of probable cause for an arrest.

ADMISSIBILITY OF STATEMENTS

The State also contends that Dillon’s statements are admissible.
Officer Seymour stated that:
... my partner advised me that he had found some — a “Signal 966,” which means, in police code, it’s narcotics inside the vehicle. Mr. Dillon immediately turned and said, “I put the blunt under the seat. They don’t know nothing about it.” So immediately with that statement, he was placed under arrest for possession of marijuana.
Dillon made the initial statement before he was given his Miranda warnings.
In State v. Roach, 322 So.2d 222 (La.1975), the Supreme Court stated that a court must employ an objective test to determine the necessity for Miranda warnings. The court stated:
An examination of the record normally discloses four factors that are particularly helpful in this task: (1) whether, prior to interrogation, probable cause existed to arrest the accused; (2) statements or actions by the police indicating an intention to hold or restrain him; (3) statements or actions by the accused indicating his reasonable belief that he is in custody and (4) the extent to which the investigation has focused on the accused.
*1071 Id. at 227.
|14In State v. Thompson, 399 So.2d 1161 (La.1981), Dissenting Opinion, 400 So.2d 1080 (La.1981), Officer Hughes was approached by a complainant alleging that he was a victim of a battery committed by several persons. Two police officers and the victim went into the lobby of a small New Orleans motel. The three defendants were present. Officer Hughes noticed what appeared to be blood spatters on Thompson’s shirt. The defendant made an inculpatory statement in response to questioning. The Louisiana Supreme Court stated:
[Officer] Hughes asked Thompson to identify himself and, in effect, to explain his apparent actions (the circumstance of apparent blood on Thompson’s shirt.) After that inquiry, Hughes did not further interrogate Thompson, did not decide to arrest Thompson, but instead, to issue him a municipal court summons ... after the conversation in the lobby.
Id. at 1165.
Further, the Supreme Court stated:
... Any interview of a person suspected of a crime will have coercive aspects to it, simply by virtue of the fact that the police officer is part of the law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned suspect is the one whom the police suspect. Miranda warnings are required only when there has been such a restriction of a person’s freedom as to render him “in custody.” It was that sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited.” [Citation omitted.] ...
Id. at 1166.
The Supreme Court concluded:
Under these circumstances, we hold that the stop or detention was not a significant detention mandating the constitutional advice. The circumstances do not | ^indicate that Thompson was deprived of his freedom or was detained in any significant way.
Id. at 1167.
Thompson’s statements were admissible although he was not given his Miranda warnings.
In State v. Alford, 29,343 (La.App. 2 Cir. 5/9/97), 694 So.2d 1162, writ denied, 97-1844 (La.11/14/97), 703 So.2d 1292, the appellate court reversed the trial court’s ruling which granted the defendant’s motion to suppress. In that case the detective’s approach of the defendant and his wife to ask why they were in an area of a marijuana patch under surveillance did not render the defendant “in custody” so as to require Miranda warnings. The appellate court stated:
The situation involved here is more analogous to a Terry stop than to a formal arrest. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the court held that a police officer who lacks probable cause but whose “observations lead him reasonably to suspect” that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke suspicion. The stop and inquiry must be reasonably related in scope to justification for the initiation. Terry, supra. Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer’s suspicions. The detainee, however, is not obliged to respond and unless the detainee’s answers provide probable cause to arrest, he must be released. Thus, Terry stops are not subject to the dictates of Miranda. ...
Id. at 1166.
The court noted:
... Defendant was not arrested, restrained, handcuffed, coerced, threatened, intimidated, verbally abused or even detained for an extended period of time. Det. McKenzie testified that until defendant’s | ifiadmission, he and his wife were free to leave the area at any time had they wanted to do so.
*1072 Clearly a crime was occurring and Det. McKenzie acted reasonably under the circumstances by approaching the Alfords and asking why they were in the area. Miranda warnings were not required and Alford’s response to this reasonable inquiry is admissible.
Id. at 1167.
Given the totality of circumstances in the present case, the officers had probable cause to arrest Dillon for the municipal violation of having the open beer bottle in the backseat of the car. Dillon’s statement was not in response to questioning, and the Miranda warnings were not required. Dillon was not the focus of the investigation concerning the blunt when he gave his initial statement that it belonged to him. Thereafter, Dillon was arrested, he was given his Miranda warnings, he signed a waiver of rights form, and he again made statements admitting that the blunt was his, and exonerating the other subjects in the vehicle from the drug charge. Officer Seymour stated that Dillon said “earlier that day, he went in the 2120 Leboeuf Court breezeway and bought a blunt from some unknown male.” The search and seizure were proper, and Dillon’s resulting statements were voluntary and admissible.
Accordingly, the trial court’s judgment is reversed, the defendant’s motion to suppress the evidence and statements is denied. The case is remanded for further proceedings.

WRIT GRANTED; REVERSED & REMANDED.

MURRAY, J., dissents with reasons.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).