pBYRNES, Judge.
The State requests a review of the magistrate court’s ruling which granted the defendant Derwin Hill’s motion to suppress evidence and statement. We reverse and remand.
On January 27,1999 the State filed a bill of information charging Derwin Hill with possession of marijuana (first offense), a violation of La. R.S. 40:966(D)(1). After a hearing on the defendant’s motion to suppress on April 1,1999, the magistrate commissioner granted the motion and suppressed the evidence. The State’s writ application followed.
At the motion hearing Officer Alvin Poole testified that on December 10, 1998 at about 9:35 p.m., he and his partner, Officer McGee, were on a business check at the Pizza Hut at Bullard and the 1-10 Service Road. The officers were exiting the Pizza Hut parking lot when two unknown black males approached them. The two males, who were in a Lincoln Continental, asked the officers for directions to Boston Drive. The driver was wearing a baseball cap; the passenger was wearing a knit hat. Officer Poole provided the directions. As the Lincoln Continental was pulling off and the two vehicles were passing each other, the officer noticed that the trunk was | ¡.slightly open. Officer Poole looked in the rear view mirror and obtained the license plate. Officer McGee “ran the plate”, i.e., checked the license plate on the police computer, and the ear was listed as stolen. By the time that the officers caught up to the car, the location was Morrison and Bullard. The officers pulled the car over and arrested the two men for possession of a stolen vehicle. Hill was the passenger. When the officers stopped the car, they informed both the driver and the passenger that they were under arrest for possession of a stolen vehicle. The officers handcuffed the occupants and placed them in the police car. The officers then searched the vehicle and found marijuana under the front passenger’s seat inside Hill’s knit hat, which he had been wearing previously.
On cross-examination Officer Poole stated that the police car was still in the Pizza Hut parking lot when the officers ran the license plate of the Lincoln Continental. The Continental had gone down Bullard. Officer Poole testified that the person who reported the car stolen had the same name as the defendant, Derwin Hill; nonetheless, the car was stolen.
On redirect examination Officer Poole stated that his suspicion was first aroused when the two men asked for directions to Boston Drive, a known drug trafficking location. Then the fact that the trunk was ajar was also suspicious.
Officer Alton McGee testified that Hill was the passenger in the Continental, and Hill told the officers that the owner of the car was his father. However, the car had been listed as stolen on the computer. Hill said that the cap belonged to him. *776 The two clear plastic bags containing green vegetable matter were found in the black or dark-colored knit cap. | ¡¡Officer McGee said that Officer Poole found the evidence under the passenger side front seat; it was partially concealed and partially visible. The two men were wearing caps when the officers first saw them. When the officers pulled the car over, Hill was not wearing his knit cap. After the officers transported Hill to the district, he signed a waiver of rights form and stated that the cap and the narcotics belonged to him.
On cross-examination defense counsel asked about the statement and declared that he had not received a copy of a statement signed by Hill. At that point the sworn statement was turned over to defense counsel, who had not previously been provided a copy. Defense counsel told the commissioner that no bill of particulars and discovery had been filed in the case. The commissioner expressed concern because there had been no mention of a motion to suppress a statement at the beginning of the hearing and defense counsel had to be allowed an opportunity to cross-examine Officer Poole as to the statement. The State claimed that it was eliciting testimony from the officer to whom the statement was made, Officer McGee. Officer McGee stated that Officer Poole was not present when Hill made the statement to him. The commissioner decided that it was not necessary to recall Officer Poole and allowed the statement.
Defense counsel then asked Officer McGee about the fact that he could not recall whether Hill had made a statement at the beginning of the State’s questioning; the officer explained that he did not understand the question. Defense counsel noted that the second time the officer was asked about a statement, he said that Hill stated that he owned the knit cap. The third time the officer testified that Hill stated that he owned the narcotics. | ¿Officer McGee said that Hill made several statements throughout the investigation. The officer denied defense counsel’s accusation that Hill signed the waiver of rights form and that information was filled in thereafter. Officer McGee said that he wrote the report, but Officer Poole retrieved the knit cap, and only he could say whether the marijuana was partially visible underneath the seat. The officer did not recall whether his police car was moving before the officers received the information that the Continental was stolen.
The commissioner concluded that the officers correctly ran the license plate in the computer and had the right to stop the vehicle that was listed as stolen to question the occupants in order to determine the ownership of the car. Once the ownership was determined, the officers would have the right to search the occupants and the vehicle for safety reasons. However, the magistrate commissioner noted that the officers did not testify that they were concerned about their safety. The commissioner noted that Officer Poole found the contraband underneath the front passenger seat; that requires a thorough search to go under the seat. The magistrate commissioner did not find that taking off a knit cap or asking directions from police officers was suspicious behavior. The commissioner concluded:
The issue is going to be upon the case of Dillon here as to whether or not the police officers had a right to search the vehicle after stopping the defendants in connection with this traffic stop.[1]
The Court finds that if the police officers did arrest the defendants prior to searching the vehicle, that they went beyond then what the law provides in terms of search. If they found the | ^contraband, it was in plain view while the defendants were inside the vehicle, then there would be a proper finding of that — of those contrabands (sic). I heard no testimony to say that was the *777 case. The testimony elicited is that after the arrest of the defendants, that the contraband was later found by Officer Poole underneath the seat in the knit cap.
Therefore, the Court finds that the search and the receipt of the contraband was improper and thereby suppress that particular evidence.
The State argues that the search was conducted incident to arrest and was valid. The police may search the passenger compartment of a car and any containers therein even though the occupant has been removed as long as the former occupant was lawfully arrested and had been an occupant just prior to that arrest. State v. Alaimo, 95-1044 (La.App. 4 Cir. 6/29/95), 657 So.2d 1102, 1104, citing New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). See also State v. Mitchell, 97-2774, 98-1128, 98-1129 (La.App. 4 Cir. 2/3/99), 731 So.2d 319.
In State v. Dillon, 98-0861, pp. 6-11 (La.App. 4 Cir. 6/24/98), 719 So.2d 1064, 1067-1069, one police officer testified that the driver of the vehicle began speeding when the police car pulled behind it. The car was traveling at 50 m.p.h. in a 25 m.p.h. speed limit high crime area. The driver subsequently came to an abrupt stop and immediately began to duck down toward the floorboard. It appeared that he was either retrieving something or concealing something. Another officer testified that before they ordered the driver out of the car, they saw him lean down toward the middle of the seats as if he were trying to conceal something. One of the officers noticed an open beer bottle on the floorboard on the driver’s side. Another open bottle was seen on the backseat floorboard where the defendant had been sitting. |fiA blunt was found under the front seat toward the back. The officers arrested the driver for traffic violations and for the open container and placed him in the back of the police car.
Although the officers allowed the occupants to remain in the car even in the dark at night, this Court felt that their one action faded to negate the fact that the officers were in a dangerous situation in the high crime area when the driver had speeded up and then leaned over as if concealing something in the car. They were justified in asking the occupants to exit the vehicle so that they could search for weapons. The officers articulated reasons for fear of their safety so that the search of the vehicle for weapons was justified pursuant to an investigatory stop. Id.
This Court discussed whether the contraband was found as a result of a valid search incident to the arrest of the driver. There was probable cause to arrest the driver for speeding, other traffic violations, and a violation of the open container law. There was also probable cause to arrest Dillon for the open container from his area of the car. This Court concluded:
The search was justified as there was need to search the car prior to allowing the subjects to reenter it and possibly have access to weapons. The driver had been arrested, handcuffed, and placed in the back of the police car before the officers searched his car. The search was incidental to the driver’s arrest. The driver had leaned over and appeared to be hiding something. The stop was made in a high crime area. The driver could have placed a weapon under the front passenger’s seat or he could have handed a weapon to one of the passengers who could have placed it in the area. The object was within the “grabbing area” or “wing span” of the driver and passengers.
State v. Dillon, p. 12, 719 So.2d at 1070.
Probable cause to arrest exists when the facts and circumstances known to the officer and of which he has reasonably trustworthy information |7are sufficient to justify a man of ordinary caution to believe the person to be arrested has committed a crime. State v. Fisher, 96-0004 (La.App. 4 Cir. 4/2/97), 692 So.2d 713, *778 writ granted, 97-1133 (La.10/31/97), 703 So.2d 2. For an arrest, the law does not require that “reasonable cause to believe” be supported by evidence sufficient to convict; the arresting officer need not be convinced beyond a reasonable doubt of the arrested person’s guilt. State v. Jones, 98-0963 (LaApp. 4 Cir. 6/24/98), 720 So.2d 1. The standard of reasonable cause to believe is a lesser degree of proof than beyond a reasonable doubt, determined by the setting in which the arrest took place, together with the facts and circumstances known to the arresting officer from which he might draw conclusions warranted by his training and experience. Id. Probable cause for an arrest must be judged by the probabilities and practical considerations of everyday life in which average people, and particularly average police officers, can be expected to act. Id. Probable cause to arrest will not be defeated simply because innocent' explanations for activity can be imagined. See also State v. Young, 93-0414 (La.App. 4 Cir. 8/17/94), 642 So.2d 255.
In assessing the reasonableness of a search, the court must balance the need to search and seize against the invasion of privacy that the search and seizure entails. State v. Tucker, 604 So.2d 600 (La.App. 2 Cir.1992), affirmed in part, reversed in part on other grounds, 626 So.2d 720 (La.1993); State v. Washington, 621 So.2d 114 (La.App. 2 Cir.1993), writ denied, 626 So.2d 1177 (La.1993). The intrusiveness of a search is not measured so much by scope as it is by whether it invades an expectation of ^privacy that society is prepared to recognize as reasonable. Twenty-Three Thousand Eight Hundred Eleven and No/100 ($23,811) Dollars in U.S. Currency v. Kowalski, 810 F.Supp. 738 (W.D.La.1993).
In reviewing the totality of circumstances, the officer’s past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549. The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determination of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La.App. 4 Cir. 1991), writ denied, 578 So.2d 131 (La.1991) Flight, nervousness, or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to stop under La.C.Cr.P. art. 215.1. State v. Belton, 441 So.2d 1195 (La.1983), certiorari denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Noto, 596 So.2d 416 (La.App. 4 Cir.1992); State v. Preston, 569 So.2d 50 (La.App. 4 Cir.1990).
In State v. Huntley, 97-0965, p. 3 (La.3/13/98); 708 So.2d 1048, 1049, the Louisiana Supreme Court stated:
In making a brief investigatory stop on less than probable cause to arrest, the police “ ‘must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.’” State v. Katie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore “articulate something more than an “‘inchoate and unparticularized suspicion or “hunch.” ’ ” United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need have only “ ‘some minimal level of objective justification. ...’” Sokolow, 490 U.S. 1, 7, 109 U.S. [S.Ct.] at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A reviewing court must take into account the “totality of the circumstances — -the whole picture,” giving deference to the inferences and deductions of a trained officer that might well elude an untrained person. Cortez, 499[449] U.S. at *779 418, 101 S.Ct. at 695. also weigh the circumstances known to the police ‘not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.’ Id.” [Emphasis added.] The court must
Reasonable cause for a stop requires less justification than probable cause to arrest. In the present case the officers had reasonable cause to stop as well as probable cause to arrest Hill and the driver for possession of stolen property-
The test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but, rather whether that expectation is of a type which society at large is prepared to recognize as being reasonable. State v. McKinney, 93-1425 (La.App. 4 Cir. 5/17/94), 637 So.2d 1120, writ denied 97-1339 (La.12/19/97), 706 So.2d 444; State v. Lambright, 525 So.2d 84 (La.App. 3 Cir. 1988), writ denied 530 So.2d 83 (La.1988). Deference should be given to the experience of the policemen who were present at the time of the incident. State v. Short, supra. A certain look or gesture may not mean anything to the ordinary person; however, a policeman has sound | t (judgment based on long experience to interpret these acts. An officer should react for his safety under the conditions and events as they occur.
In State v. Katie, 96-2650 (La.9/19/97), 699 So.2d 879, 881, the Louisiana Supreme Court found that: “the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer’s action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action,” citing Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978). Even if the officers do not articulate reasons justifying a stop and search, the officers only need “articulable facts” taking into account the entire picture.
In the present case, although the actions of Hill and the driver may have been innocent if considered individually, under the totality of the circumstances — the whole picture, giving deference to the inferences and deductions of a trained officer that might well elude an untrained person, the officer had sufficient reasons to justify the search and subsequent seizure of the contraband.
The officers’ search of the vehicle was valid. The trunk of the car was ajar and the officers were justified in checking the license plate of the vehicle. “Articulable facts” were that the subjects had asked for directions to a high drug trafficking area, and the subjects were in an automobile that had been reported stolen. Given the officers’ experience, their observation that Hill had removed his cap when the police stopped the vehicle appeared to be suspicious under the totality of circumstances. When the Lincoln Continental was listed as stolen, the officers were justified in stopping the vehicle and had reason to |1Tarrest the occupants for possession of stolen property at that time although Hill later was charged with possession of marijuana. Consequently, as reasonably cautious policemen, the officers were entitled to fear that the occupants of the vehicle might have weapons, and the officers were justified in searching the car. Further, Hill had no reasonable expectation of privacy in the stolen vehicle. The Lincoln Continental was reported stolen, and the defendant Hill was not the owner. The commissioner found that the officers had a right to stop the vehicle that was listed as stolen.
At the time that the police officers actually stopped the Lincoln Continental and found the contraband under the front passenger seat, they reasonably believed that the car was stolen and Hill had no expectation of privacy in the stolen Continental. The contraband was properly seized. Hill *780 properly waived his Miranda rights, and his statements are admissible.
Accordingly, the trial court’s ruling is reversed, and the defendant’s motion to suppress is denied. The case is remanded for further proceedings.

WRIT GRANTED; REVERSED & REMANDED.

. This was not really a routine traffic stop. The officers were stopping the car in order to arrest the occupants for possession of a stolen vehicle.