**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael Stephen LANCELLOTTI,
Defendant-Appellant.**

**No. 82–1594.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 14, 1983.

Vacated Oct. 11, 1983.

Resubmitted Oct. 10, 1984.

Decided May 23, 1985.

Sandra Teters, Asst. U.S. Atty., U.S. Attorney's Office, San Francisco, Cal., for plaintiff-appellee.

Allen Ruby, Morgan, Ruby, Teter, Schofield, Franich, Bouchier & Fredkin, San Jose, Cal., for defendant-appellant.

Before KENNEDY and REINHARDT, Circuit Judges, and HOFFMAN,* District Judge.

KENNEDY, Circuit Judge:

Michael Stephen Lancellotti appeals his conviction for possession of firearms in violation of Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. app. § 1202(a)(1) (1982). The appeal raises two distinct issues: first, whether the trial court erred in denying Lancellotti's motion to suppress evidence seized from his trailer pursuant to a valid search warrant where, prior to the issuance of the warrant, Santa Clara County Sheriff's officers had entered and secured the trailer; and second, whether there was sufficient evidence before the trial court to support the conviction. We deferred submission of this case pending disposition by the Supreme Court in *Sequra v. United States*, — U.S. —, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). We now affirm.

The Santa Clara County Sheriff's Department had reliable information and probable cause to arrest Lancellotti after the victim of a shooting identified him as the assailant and other witnesses corroborated the identification. At approximately 2:00 a.m., shortly following receipt of this information, the Sheriff's Office placed a call to the trailer while officers at the scene guarded its exits. A male voice with an Eastern or New York accent answered the phone and stated that "Mike" was not there. Lancellotti denies making this statement. The man on the phone was told to step outside with his hands in plain view, and responded that he would do so after getting dressed. Approximately five minutes later, Lancellotti stepped out of the trailer and was arrested.

The officers entered the trailer for about ten minutes to ascertain that no one else was inside. Before and after Lancellotti emerged from the trailer, the officers had heard noises coming from the direction of

the trailer, but, due to the proximity of residences in the trailer park, had been unable to determine whether the noises were in fact coming from Lancellotti's trailer rather than from another nearby residence. No other occupant was discovered in the trailer. Nor was any evidence seized at this time. It is unclear whether the officers then sat in the kitchen of the trailer for an hour or so until relief arrived, or whether they waited outside for their relief. When the relieving officers arrived, however, the trailer was placed under surveillance from outside until approximately 8:00 a.m., when a search warrant was issued. Upon execution of the warrant, two firearms, the evidence at issue in this case, were found in the trailer.

Lancellotti contends the motion to suppress the evidence should have been granted on the ground that the issuance of a valid search warrant for the firearms did not purge the evidence of the taint created by the prior warrantless entry into the trailer. We evaluate the district court's ruling based on our independent review of the record. *Ker v. California*, 374 U.S. 23, 33–34, 83 S.Ct. 1623, 1629–1630, 10 L.Ed.2d 726 (1963); *United States v. Kunkler*, 679 F.2d 187, 192 n. 6 (9th Cir.1982); *United States v. Bates*, 533 F.2d 466, 468 (9th Cir.1976); *accord United States v. McConney*, 728 F.2d 1195, 1203, 1205 (9th Cir.) (en banc), *cert. denied*, — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). We find this issue is controlled by *Sequra v. United States*, — U.S. —, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).

In *United States v. Allard*, 600 F.2d 1301 (9th Cir.1979) ("*Allard I*"), we held that a warrantless entry of a hotel room was not justified by exigent circumstances. 600 F.2d at 1304. Then, in *United States v. Allard*, 634 F.2d 1182 (9th Cir.1980) ("*Allard II*"), we held that where police officers remained in the room for two hours until a search warrant was issued, their conduct, when combined with the ini-

---

* Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of   Virginia, sitting by designation.

tial illegal entry, constituted an ongoing illegal "seizure" of the room and its contents, tainting the evidence ultimately obtained pursuant to the warrant. The fact that the Government had sufficient independent grounds for obtaining the search warrant and did not need to rely on the information gathered in the course of improper activity was deemed insufficient to dissipate the taint. The panel stated:

> where a defendant establishes that the government illegally "secured" and thereby seized evidence, and that seizure continues while the government procures a search warrant, the defendant has demonstrated a sufficient nexus between the illegality and the subsequently seized evidence notwithstanding any "independent source" supporting the warrant. Upon establishing this nexus, the burden shifts to the government to demonstrate that it would have *both independently discovered and successfully obtained the proffered evidence, notwithstanding the illegal seizure.*

634 F.2d at 1187 (emphasis added). The seizure in *Allard* was held improper under this stringent two-part test.

In the case before us, the district court admitted the firearms seized from the trailer and found *Allard II* distinguishable. The contention on appeal is that *Allard II* controls. We need not reach the point for we conclude that the rationale of *Allard II* and the cases following it, such as *United States v. Lomas*, 706 F.2d 886 (9th Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 720, 79 L.Ed.2d 182 (1984), have been rejected by the Supreme Court in *Sequra v. United States*, —— U.S. ——, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).

In *Sequra* New York Drug Enforcement Task Force agents, after arresting Segura in the lobby of his apartment building, made a warrantless entry of his apartment and conducted a "limited security check of the apartment to ensure that no one else was there who might pose a threat to their safety or destroy evidence." 104 S.Ct. at 3384. Two Task Force agents then remained in the apartment for approximately 19 hours until a search warrant was issued. Upon the issuance of the warrant, the agents searched the apartment and seized almost three pounds of cocaine and various other incriminating items. The Supreme Court undertook to decide "whether [the] drugs and ... other items ... first discovered by the agents the day after the entry, under an admittedly valid search warrant, should have been suppressed," 104 S.Ct. at 3385, and did not review the Second Circuit's affirmance of the district court's determination that the initial warrantless entry and limited security check of the apartment were not justified by exigent circumstances and were therefore illegal.

A majority of the Court determined that "[w]hether the initial entry was illegal or not is irrelevant to the admissibility of the challenged evidence because there was an independent source for the warrant under which that evidence was seized," 104 S.Ct. at 3391, and held that the valid warrant was sufficient to purge the evidence of any taint created by the initial illegal entry. In so holding, the Court reaffirmed the independent source rule, *see Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920), a doctrine followed by all federal courts of appeals except the Ninth Circuit. *Sequra*, 104 S.Ct. at 3391 n. 9. The majority explicitly declined to compel the Government to demonstrate that it could have successfully obtained the evidence in question without the illegal entry and without securing the premises, as required by *Allard II*. This element of the *Allard II* rule was unequivocally rejected. 104 S.Ct. at 3392.

When an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point, a three judge panel of this court may reexamine our precedent to determine its continuing authority. *United States v. Maybusher*, 735 F.2d 366, 371 n. 1 (9th Cir.1984); *LeVick v. Skaggs Co.*, 701 F.2d 777, 778 (9th Cir.1983). Having re-

viewed our holdings in *Allard II* and *Lomas,* we conclude they have been effectively overruled by the Supreme Court and are no longer controlling precedents in this circuit. We are therefore bound to follow the *Sequra* analysis in resolving the case before us. We are in accord in this view with the decision in *United States v. Moreno,* 701 F.2d 815 (9th Cir.1985).

Although we are inclined to agree with the district court that the initial warrantless entry of Lancellotti's trailer was justified by exigent circumstances since the officers entered for the purpose of conducting a protective sweep, *Sequra* does not require us to decide this issue. 104 S.Ct. at 3391. Nor are we required to decide whether, by securing the trailer until the search warrant was issued, the officers effected an illegal seizure of the premises. We must only decide whether there was an independent source for the discovery of the evidence seized, unrelated to matters observed by the officers pursuant to the warrantless entry of the trailer.

■ In this case, as in *Sequra,* there was ample information, independent of the warrantless entry, to furnish probable cause for the search warrant under which the incriminating evidence was ultimately seized. The victim of the shooting had identified Lancellotti as his assailant; witnesses had heard Lancellotti threaten to kill anyone who called the police or testified against him; and Lancellotti was known to have at least two firearms in his possession. Under *Sequra* this information, known to the police before the initial entry of the trailer, was sufficient to purge the evidence subsequently seized of any potential taint resulting from the initial entry, 104 S.Ct. at 3391, since the connection between the warrantless entry and the subsequent discovery and seizure of evidence was so attenuated. *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939). *See also Wong Sun v. United States,* 371 U.S. at 488, 83 S.Ct. at 417; *Silverthorne Lumber*

*Co. v. United States,* 251 U.S. at 392, 40 S.Ct. at 183. The motion to suppress was properly denied.

■ The second issue on appeal concerns the sufficiency of the evidence. Lancellotti contends there was insufficient evidence before the trial court to establish a nexus between the firearms in his possession and commerce as required under Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. app. § 1202(a)(1). That statute provides in pertinent part:

> Any person who—
>
> (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony [1], ... and who receives, possesses, or transports in commerce or affecting commerce ... any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

Since Lancellotti failed to object to the sufficiency of the evidence at trial, we review the findings of the district court for plain error only. Fed.R.Evid. 103(a), (d); Fed.R. Crim.P. 52(b). *See also United States v. Kennedy,* 726 F.2d 546, 548 (9th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 365, 83 L.Ed.2d 301 (1984). Plain error is highly prejudicial error that affects substantial rights, *United States v. Kennedy,* 726 F.2d at 548; *United States v. Gilman,* 684 F.2d 616, 620 (9th Cir.1982), and reversal for plain error is appropriate only when necessary to safeguard the integrity and reputation of the judicial process or to forestall a miscarriage of justice. *United States v. Krasn,* 614 F.2d 1229, 1236 (9th Cir.1980); *United States v. Giese,* 597 F.2d 1170, 1199 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979).

■ A nexus between commerce and the firearm possessed by the convicted felon is an essential element of a section 1202(a)(1) violation. *United States v. Bass,* 404 U.S. 336, 350, 92 S.Ct. 515, 523, 30

---

1. Lancellotti was found guilty of a felony by a New York State court in 1972 and is therefore a convicted felon within the meaning of the statute.

L.Ed.2d 488 (1971). In applying the statute, this court will reverse lower court decisions that fail to establish such a nexus. *See, e.g., United States v. Hiram,* 473 F.2d 670, 671 (9th Cir.1973) (per curiam). The nexus requirement, however, is minimal, and is satisfied by showing that the firearms possessed by the convicted felon previously traveled in commerce. *Scarborough v. United States,* 431 U.S. 563, 575, 97 S.Ct. 1963, 1969, 52 L.Ed.2d 582 (1977); *United States v. Robbins,* 579 F.2d 1151, 1153 (9th Cir.1978).

At issue here is the effect of paragraph 1 of the stipulation executed by the parties and filed by the district court on August 19, 1982, which states: "Exhibits 1–8 *may be admitted* into evidence, all objections to foundational facts are waived." (Emphasis added). Exhibits four and five contain the certifications of manufacture and record search information prepared by the Bureau of Alcohol, Tobacco and Firearms for each of the two firearms in question. These documents establish that the firearms were manufactured in Southport, Connecticut, and shipped to Belmont, California, and had therefore traveled in interstate commerce as required by section 1202(a)(1). *Scarborough,* 431 U.S. at 575, 97 S.Ct. at 1969; *Robbins,* 579 F.2d at 1153.

■ Lancellotti's contention is that it is unclear from the words "may be admitted" whether the trial court was required to make a further, specific order to put the exhibits in evidence; and that since the court made no specific findings regarding the exhibits, it is possible that the exhibits were not before the court. While the potential ambiguity regarding whether any action was required of the trial court could have been avoided had the parties merely stipulated that the exhibits were evidence to be considered by the court, we view the stipulation as a self-executing document which obviates the need for any formal judicial action. *Cf. Gardiner v. A.H. Robbins Co.,* 747 F.2d 1180, 1189 (8th Cir.1984) (entry of stipulation of dismissal is effective automatically and does not require judicial approval). We therefore hold that exhibits four and five were properly before the trial court. *See Starsky v. Williams,* 512 F.2d 109, 111–13 (9th Cir.1975); *Southwest Forest Industries, Inc. v. Westinghouse Electric Corp.,* 422 F.2d 1013, 1017–18 (9th Cir.), *cert. denied,* 400 U.S. 902, 91 S.Ct. 138, 27 L.Ed.2d 138 (1970); *Gillespie v. Norris,* 231 F.2d 881, 883–84 (9th Cir. 1956) (where parties agree to try a case upon an undisputed record of specific affidavits, admissions, and other documents, all documents submitted as part of such record are before the trial court). *Accord Wilson v. Block,* 708 F.2d 735, 745 n. 7 (D.C.Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 371, 739, 78 L.Ed.2d 330 (1984). Having so concluded, we need not ascertain whether the trial judge actually considered exhibits four and five, although his statement "I've read the documents and ... on the basis of that, I have to find you guilty of both counts," made during the suppression hearing, would indicate that he did. It is enough that there was sufficient evidence before the court to support a conviction under section 1202(a)(1). The Government has therefore established the required nexus between the firearms and commerce.

■ In cases tried on stipulated facts, each party should exercise great care to avoid ambiguity and imprecision with respect to the factual matters agreed upon. Although stipulated fact trials, properly conducted, conserve judicial resources and enhance the efficient functioning of the judicial process as a whole, they contain a myriad of opportunities for an incomplete record. In deciding that only one particular issue will be tried and that everything else will be stipulated, the parties risk an incorrect result based on an incomplete record. Stipulations should be presented with great care. A stipulation should indicate in unequivocal terms what is before the trial court. The parties should not create an ambiguous record. In this case, however, we find no error and sufficient evidence.

The conviction is AFFIRMED.