Nelson **GALBRAITH**, Plaintiff–Appellant,

v.

**COUNTY OF SANTA CLARA, a Municipality of the State of California; Angelo Ozoa, MD, individually, and in his official capacity as Santa Clara County Chief Medical Examiner–Coroner, Defendants–Appellees.**

No. 00–17369.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 2002.

Filed Oct. 9, 2002.

Michael Goldsmith, Park City, Utah, and Thomas R. Hogan, Law Offices of Thomas R. Hogan, San Jose, CA, for plaintiff-appellant.

James E. Towery, Hoge, Fenton, Jones & Appel, Inc., San Jose, CA, for defendants-appellees.

Before SCHROEDER, Chief Judge, B. FLETCHER and KOZINSKI, Circuit Judges.

## OPINION

SCHROEDER, Chief Judge.

This appeal involves a claim that a county coroner falsified an autopsy report, leading to the false arrest and prosecution of plaintiff Nelson Galbraith ("Galbraith") for murder in violation of his constitutional rights. The central question is whether a heightened pleading standard should continue to apply to constitutional tort claims in which improper motive is an element. *See Branch v. Tunnell,* 937 F.2d 1382, 1385–88 (9th Cir.1991). In light of intervening Supreme Court cases, we hold that the *Branch* heightened pleading standard no longer applies. *See Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Because Galbraith's amended complaint adequately states claims for relief under the Fourth Amendment absent the heightened pleading standard, *see* Fed.R.Civ.P. 8(a)(2), we reverse the district court's order dismissing the complaint with prejudice and remand for further proceedings. We affirm the district court's dismissal of the due process claims, however, because the more specific provisions of the Fourth Amendment govern our analysis. *See County of Sacramento v. Lewis,* 523 U.S. 833, 843, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (citing *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

## ALLEGATIONS OF THE AMENDED COMPLAINT

When reviewing a district court's order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we take the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party. *Epstein v. Washington Energy Co.,* 83 F.3d 1136, 1140 (9th Cir.1996). The facts as alleged in the amended complaint at issue here are as follows.

Galbraith maintains that his wife, Josephine Galbraith ("Josephine"), committed suicide on September 18, 1995. She first tried to slit her wrists, then strangled herself by double-knotting a sash around her neck. During this time, Galbraith was in a separate room watching television. Josephine had been under the care of physicians for severe depression with suicidal ideation. In the days before her death, Josephine asked her physicians for a lethal dose of medication; she repeatedly told family members that she wanted to die, and said she just wanted to "sprout wings and fly away."

The officers who investigated Josephine's death originally concluded that the cause of death was suicide. They based their determination on Josephine's statements before her death and the absence of scattered blood, defensive wounding, and indication of a struggle at the scene. Dr. Angelo Ozoa, the County's Chief Medical

Examiner–Coroner, performed an autopsy on Josephine's body, and concluded that Josephine did not commit suicide but was instead strangled. This finding shifted the focus of the investigation.

Dr. Ozoa's autopsy report, attached to the amended complaint, describes Josephine's body as "that of a moderately well developed, moderately well nourished white female." It further states that external examination of the neck revealed "somewhat transverse wrinkle marks but ... no evidence of injury" and internal examination revealed that "[t]he hyoid, larynx, trachea, soft tissues and cervical spine are unremarkable and show no evidence of injury." Despite this apparent lack of injury to the neck, both internally and externally, Dr. Ozoa concluded that the cause of death was asphyxia due to ligature strangulation by an assailant. Galbraith alleges that this conclusion was a result of Dr. Ozoa's "incompetence" and that Dr. Ozoa deliberately attempted to cover up his incompetence from this point forward.

Dr. Ozoa communicated his autopsy findings to Detective Michael Yore of the Palo Alto Police Department. Detective Yore's investigative report, which is also attached to the amended complaint, states: "This homicide was originally thought to be a suicide until the Corners [sic ] Office advised me that he [sic] cause of death had changed." Detective Yore spoke with Dick Miller, an employee in the County Coroner's office, who informed him that the cuts on Josephine's wrists were too superficial to have caused her death. Miller further indicated that the sash tied around Josephine's neck had asphyxiated her and Dr. Ozoa concluded "the victim was not strong enough to have tied it herself." The report states that "[t]he only other person in the house [at ] the time of the homicide was the victim's husband Nelson Galbraith."

According to the amended complaint, Galbraith was arrested and charged with murdering Josephine as a direct result of Dr. Ozoa's determinations. Dr. Ozoa testified at Galbraith's preliminary hearing and trial that Josephine was strangled, that the death was not a result of suicide, and that Galbraith was the likely perpetrator. The jury acquitted Galbraith.

After Galbraith's acquittal, Josephine's body was exhumed. An expert retained by Galbraith found that Josephine's neck organs were not properly dissected. More specifically, the expert concluded that Dr. Ozoa could not have examined key internal neck structures that Dr. Ozoa claimed to have examined in the autopsy report, such as the hyoid bone, which remained fully encased in muscle, and the cartilage of the trachea, which was obscured by the still-attached thyroid gland. The expert opined that close examination of these structures would have been central to any forensic determination that the cause of death was ligature strangulation by an assailant. Galbraith's amended complaint alleges that Dr. Ozoa intentionally lied about the nature and extent of the autopsy to the police, prosecutors, and later on the stand in order to cover up his shoddy work.

## PROCEDURAL HISTORY

The complaint Galbraith originally filed in federal court stated four claims for relief: (1) against Dr. Ozoa and twenty "Doe" defendant coroners and police officers for violating the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983; (2) against Dr. Ozoa and Santa Clara County (the "County") for policies and practices that proximately caused the false arrest and malicious prosecution of Galbraith in derogation of his constitutional rights under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978);

(3) malicious prosecution under state law; and (4) fraud under state law.

On defendants' Rule 12(b)(6) motion, the district court dismissed the state law claims with prejudice because it concluded that Dr. Ozoa and the County were immune from claims of malicious prosecution and fraud under state law. Galbraith does not challenge these rulings on appeal. The district court also dismissed the federal claims without prejudice. It held that the complaint pled only negligence, whereas constitutional tort actions that involve improper motive "must contain nonconclusory allegations of unlawful intent." In so holding, the district court relied on *Branch v. Tunnell*, 937 F.2d 1382, 1386–87 (9th Cir.1991) (*"Branch I"*). The district court also held that any amended pleading would have to allege specific evidence that Dr. Ozoa's falsifications, and not other evidence available to the prosecution, caused Galbraith to be arrested and prosecuted. *See Smiddy v. Varney*, 803 F.2d 1469, 1472–73 (9th Cir.1986) (*"Smiddy II"*) (requiring evidence on summary judgment "sufficient to overcome the presumption that the prosecutor independently exercised her official duty in instituting the prosecution").

Galbraith then filed an amended complaint stating two claims for relief: (1) against Dr. Ozoa and twenty "Doe" defendant coroners and police officers for depriving Galbraith of his rights under the Fourth, Fifth and Fourteenth Amendments and 42 U.S.C. § 1983; and (2) against Dr. Ozoa and the County under § 1983 and *Monell* for policies and practices proximately causing the false arrest and malicious prosecution of Galbraith in derogation of his constitutional rights. Galbraith attached the autopsy report, Dr. Ozoa's handwritten notes from the autopsy, and the investigative report of Detective Yore to the amended complaint.

Once again, the district court granted defendants' motion to dismiss the complaint, this time with prejudice. Citing *Branch I*, the court concluded that the amended complaint's allegations of incompetent autopsy and omissions in the autopsy report "could very well amount to negligence—but as a matter of law this failure does not support a claim for intentional falsification." The court further held that, under *Smiddy II*, the amended pleading failed to allege that Dr. Ozoa's supposed falsifications, and not independent prosecutorial judgment, caused the County to arrest and charge Galbraith for murder. The district court entered judgment, and Galbraith filed a timely notice of appeal.

## DISCUSSION

Relying on *Branch I*, the district court evaluated Galbraith's amended complaint under a heightened pleading standard. The court held the amended complaint deficient because it failed to identify with particularity which of Dr. Ozoa's alleged falsifications led the prosecutor to charge Galbraith with murder; what evidence established that Dr. Ozoa knew that his statements were false; and how the falsifications caused the charging decision. *See Branch I*, 937 F.2d at 1387–88.

■ Subsequent cases from the Supreme Court, however, have undermined the authority of *Branch I*. Although a three judge panel normally cannot overrule a decision of a prior panel on a controlling question of law, *see Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir.2001), we may overrule prior circuit authority without taking the case en banc when "an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point." *United States v. Lancellotti*, 761 F.2d 1363, 1366 (9th Cir.1985). We

now hold that *Branch I* and its progeny have been overruled.

■ In *Branch I,* this circuit adopted a modified version of the D.C. Circuit's rule then in effect requiring heightened pleading of improper motive in constitutional tort cases where subjective intent was an element. *See Branch I,* 937 F.2d at 1385–86 (discussing *Siegert v. Gilley,* 895 F.2d 797, 801–02 (D.C.Cir.1990)). We held that "in order to survive a motion to dismiss, plaintiffs must state in their complaint nonconclusory allegations setting forth evidence of unlawful intent." *Id.* at 1386. We explained that "bare allegations of improper purpose are insufficient to subject government officials to discovery and the related burdens of defending a lawsuit." *Id.* Although we adopted this heightened pleading standard, we declined to adopt the D.C. Circuit's further requirement that the standard be satisfied with direct rather than circumstantial evidence, recognizing that "evidence of intent is largely within the control of the defendant and often can be obtained only through discovery." *Id.* at 1386–87.

■ In 1993, two years after *Branch I,* however, the Supreme Court decided *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). There, the Court held that the courts could not impose a heightened pleading standard on plaintiffs alleging § 1983 claims against municipalities. *Id.* at 164, 113 S.Ct. 1160. Rather, the Court explained that Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires a complaint to include only "a short and plain statement of the claim," controlled, absent an express exception as articulated in Rule 9(b). *Id.* at 168, 113 S.Ct. 1160. The Court said any additional pleading requirements may be added by changing the Rules but not by judicial intervention:

Perhaps if Rules 8 and 9 were rewritten today, claims against municipalities under § 1983 might be subjected to the added specificity requirement of Rule 9(b). But that is a result which must be obtained by the process of amending the Federal Rules, and not by judicial interpretation. In the absence of such an amendment, federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.

*Id.* at 168–69, 113 S.Ct. 1160.

When *Branch* came back to us on appeal after remand, we were aware of the tension between *Leatherman* and *Branch I.* *See Branch v. Tunnell,* 14 F.3d 449, 455 (9th Cir.1994) ("*Branch II* "). However, we concluded that *Leatherman* was limited to claims against municipalities and that it therefore had no effect on claims against individual officers: "Although *Leatherman* is closely on point, the Court expressly declined to make the extension necessary to undermine *Branch I:* The Court cordoned off the question whether a heightened pleading standard might be justified in an action against an individual officer." *Id.* at 456. We therefore held that we were "bound to follow *Branch I.*" *Id.* at 457; *see also Housley v. United States,* 35 F.3d 400, 401 & n. 3 (9th Cir.1994).

After *Branch I* and *Branch II,* however, the Supreme Court went on to decide in *Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998), that appellate courts should not establish heightened pleading or proof requirements regarding improper motive in constitutional tort cases brought against individual defendants. Any such new heightened standard must be imposed by amending the Federal Rules or the applicable statutes. The Court reiterated its earlier refusal "to change the Federal Rules ... [by] requiring pleading of heightened spec-

ificity," and the Court emphasized that "questions regarding pleading, discovery, and summary judgment are most frequently and most effectively resolved either by the rulemaking process or the legislative process." *Id.* at 595 (citing *Leatherman,* 507 U.S. at 163–69, 113 S.Ct. 1160).

In light of *Crawford–El,* nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b). The D.C. Circuit, which supplied the authority for *Branch,* has disavowed its heightened standard. *See Harbury v. Deutch,* 233 F.3d 596, 611 (D.C.Cir.2000), *rev'd on other grounds sub nom. Christopher v. Harbury,* —— U.S. ——, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) ("The Supreme Court ... held that plaintiffs making constitutional claims based on improper motive need not meet any special heightened pleading standard.") (citing *Crawford–El*). The Tenth and Seventh Circuits have arrived at the same conclusion. *See Currier v. Doran,* 242 F.3d 905, 916 (10th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 543, 151 L.Ed.2d 421 (2001) ("We conclude that this court's heightened pleading requirement cannot survive *Crawford–El.*"); *Nance v. Vieregge,* 147 F.3d 589, 590 (7th Cir.1998) ("Civil rights complaints are not held to a higher standard than complaints in other civil litigation.") (citing *Crawford–El*); *see also Rippy ex rel. Rippy v. Hattaway,* 270 F.3d 416, 427 (6th Cir.2001) (Gilman, J., concurring).

The one contrary decision is *Judge v. City of Lowell,* 160 F.3d 67, 72–75 (1st Cir.1998), but we agree with the Tenth Circuit in refusing to follow *Judge* because it is not consistent with *Crawford–El. See Currier,* 242 F.3d at 914–17; *see also Greenier v. Pace, Local No. 1188,* 201 F.Supp.2d 172, 177 (D.Me.2002) (suggesting that *Judge* has been overruled by subsequent Supreme Court authority); *Gallardo v. DiCarlo,* 203 F.Supp.2d 1160,

1163–64 (C.D.Cal.2002) (refusing to follow *Judge* in light of *Crawford–El*).

Any remaining doubt on the issue was dispelled when the Supreme Court revisited heightened pleading requirements earlier this year, after the district court's decision in this case, and rejected their use as a device to weed out unmeritorious claims. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). This decision was issued subsequent to the district court decision in this case. Although *Swierkiewicz* dealt specifically with heightened pleading requirements in Title VII discrimination cases, it also stated that "complaints in these cases, *as in most others,* must satisfy only the simple requirements of Rule 8(a)." *Id.* at 998 (emphasis added). As it did in *Leatherman,* the Court pointed to Rule 9(b), which requires heightened pleading only in claims of fraud or mistake, *id.,* and which defendants here have never claimed applies to this case. The Court in *Swierkiewicz* also stressed the availability of other procedural devices under the Federal Rules—including a motion for more definite statement under Rule 12(e) or a motion for summary judgment under Rule 56—as tools to weed out meritless claims. *Id.* at 998–99. "The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." *Id.* at 999.

■ In light of *Crawford–El* and *Swierkiewicz,* we must conclude that *Branch I* and *II* are no longer good law to the extent that they require heightened pleading of improper motive in constitutional tort cases. While it is true that cases in our circuit have cited *Branch* after Crawford–El, *see, e.g., Papa v. United States,* 281 F.3d 1004, 1010–11 & nn. 23–24 (9th Cir.2002); *Lee v. City of Los Angeles,* 250 F.3d 668, 679 n. 6 (9th Cir.

2001), none has expressly addressed the continuing viability of Branch's heightened pleading standard in light of *Crawford–El* and *Swierkiewicz*. The rule of *Branch* is inconsistent with our federal system of notice pleading, as the Supreme Court explained in *Swierkiewicz*. Accordingly, we must hold that *Branch* has been overruled by subsequent Supreme Court authority. *See Lancellotti*, 761 F.2d at 1366.

The district court's further requirement that the amended complaint allege specific facts to overcome the presumption that independent prosecutorial judgment, and not Dr. Ozoa's falsifications, led to the arrest and prosecution of Galbraith, also cannot stand. In so requiring, the district court relied on *Branch I*, 937 F.2d at 1387–88, and *Smiddy I. v. Varney*, 665 F.2d 261 (9th Cir.1981) ("*Smiddy I*"). In *Smiddy II*, however, we clarified our earlier decision. We explained that the presumption of independent prosecutorial judgment in the charging decision is an evidentiary presumption applicable at the summary judgment stage to direct the order of proof; it is not a pleading requirement to be applied to a motion to dismiss, before discovery has taken place:

> The burden was upon Smiddy to prove facts that would overcome the presumption mentioned in *Smiddy I* that the district attorney acted according to law. The presumption is a common device *to direct the order of proof. See* Cal.Evid. Code § 664 (West 1982). If Smiddy had contrary evidence, *e.g.,* that the district attorney was subjected to unreasonable pressure by the police officers, or that the officers knowingly withheld relevant information with the intent to harm Smiddy, or that the officers knowingly supplied false information, Smiddy had the *burden to produce* it. *In the absence of evidence* to rebut the presumption, the presumption was sufficient to require *summary judgment* for the de-

fendants upon the specific point covered by the remand.

*Smiddy II,* 803 F.2d at 1471 (emphases added). Thus, as the Supreme Court subsequently held in *Swierkiewicz,* the district court should not have converted an evidentiary presumption applicable to the order of proof into a heightened standard for pleading. *See Swierkiewicz,* 122 S.Ct. at 996–98.

We therefore turn to the amended complaint to determine whether its allegations are adequate to state a claim in the absence of any heightened pleading standard. In dismissing the amended complaint, the district court relied on our authority holding that government investigators may be liable for violating the Fourth Amendment when they submit false and material information in a warrant affidavit. *See Branch I,* 937 F.2d at 1387–88; *see also Butler v. Elle,* 281 F.3d 1014, 1024–25 (9th Cir.2002); *Liston v. County of Riverside,* 120 F.3d 965, 972–975 (9th Cir.1997); *Hervey v. Estes,* 65 F.3d 784, 790 (9th Cir.1995). Under this authority, a § 1983 plaintiff must show that the investigator "made deliberately false statements or recklessly disregarded the truth in the affidavit" and that the falsifications were "material" to the finding of probable cause. *Hervey,* 65 F.3d at 790 (9th Cir.1995).

■■ Neither side has challenged the district court's application of these warrant affidavit cases to the present facts, and we agree, without deciding any issue of immunity, that a coroner's reckless or intentional falsification of an autopsy report that plays a material role in the false arrest and prosecution of an individual can support a claim under 42 U.S.C. § 1983 and the Fourth Amendment. *See Cabrera v. City of Huntington Park,* 159 F.3d 374 (9th Cir.1998) (analyzing claims of false arrest and malicious prosecution under 42 U.S.C. § 1983 and the Fourth Amend-

ment). Galbraith claims that Dr. Ozoa recklessly disregarded the truth by asserting in his autopsy report that Josephine was strangled by an assailant while ignoring abundant evidence that pointed to suicide. The amended com15 plaint also describes deficiencies in the autopsy itself tending to indicate that Dr. Ozoa never did the work he claimed he had done to support his conclusion that Josephine's death was caused by an assailant. Finally, the amended complaint alleges that Dr. Ozoa deliberately lied about the autopsy in the autopsy report, in his communications with other investigators, and on the witness stand at the preliminary hearing in order to cover up his incompetence, and that these lies proximately caused Galbraith's arrest and prosecution for murder. The amended complaint therefore adequately alleges a Fourth Amendment violation.

 Galbraith's allegation that Dr. Ozoa's misconduct conformed to County policy also suffices to state a *Monell* claim against the County. "In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" *Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 624 (9th Cir.1988) (quoting *Shah v. County of Los Angeles,* 797 F.2d 743, 747 (9th Cir.1986)).

We agree with the district court, however, that Fourth Amendment principles, and not those of due process, govern this case. *See County of Sacramento v. Lewis,* 523 U.S. 833, 843, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (discussing *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The Fourth Amendment addresses "pretrial deprivations of liberty," *Albright v. Oliver,* 510 U.S. 266, 274, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion), also

at issue here, so "[the Fourth] Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* at 273, 114 S.Ct. 807 (quoting *Graham,* 490 U.S. at 395, 109 S.Ct. 1865); *see also id.* at 276–77, 114 S.Ct. 807 (Ginsburg, J., concurring). The dismissal of the due process claims was therefore correct.

## CONCLUSION

*Branch v. Tunnell,* 937 F.2d 1382 (9th Cir.1991), and *Branch v. Tunnell,* 14 F.3d 449 (9th Cir.1994), have been overruled by subsequent controlling Supreme Court authority to the extent that they require heightened pleading of improper motive in constitutional tort cases against individual officers. We AFFIRM the dismissal of the due process claims but REVERSE and REMAND the Fourth Amendment claims for further proceedings consistent with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED. No costs.